**UNITED STATES of America and Earl Tripplett, Revenue Officer, IRS, Petitioners-Appellees.**

v.

**The FIRST NATIONAL BANK OF CHICAGO, Respondent-Appellant.**

No. 80–2713.

United States Court of Appeals, Seventh Circuit.

Argued Nov. 30, 1981.

Decided Jan. 24, 1983.

As Amended March 1, 1983.

Rehearing and Rehearing En Banc Denied March 24, 1983.

Leon Bordelon, III, Chicago, Ill., for respondent-appellant.

Mary L. Fahey, Tax Division, Dept. of Justice, Washington, D.C., for petitioners-appellees.

Before SPRECHER * and BAUER, Circuit Judges, and FAIRCHILD, Senior Circuit Judge.

* Circuit Judge Robert A. Sprecher heard oral argument, participated in the conference which

followed, and voted to reverse. He died May

FAIRCHILD, Senior Circuit Judge.

The district court granted enforcement of an Internal Revenue Service summons directed to First National Bank of Chicago (First Chicago), seeking disclosure of certain records in First Chicago's branch bank in Athens, Greece. We decide that First Chicago has adequately demonstrated that compliance will subject its employees to the risk of substantial criminal penalties under Greek law, and that a balancing of relevant competing interests weighs against compelling disclosure at this time. We therefore reverse the judgment of the district court, but remand for consideration of an order requiring First Chicago to make a good faith effort to secure permission to make the information available.

## I. The Facts

On September 24, 1979, Internal Revenue Service Officer Earl Tripplett issued a summons to the First Chicago requiring production of bank statements of Christ and Helen Panos for the month of June 1978 and the balance of funds in their account at the Athens, Greece, branch of First Chicago on June 19, 1978. (The Panoses now reside in Greece.)

First Chicago refused to furnish the requested information, stating:

> [O]ur Greek counsel has informed us that under the Greek Bank Secrecy Act, any and all of our employees—whether in Greece or elsewhere—who reveal exact account information about depositors of our Branch in Athens to any third party may be subject under the Act to criminal penalties, including, inter alia, not less than a six-month prison sentence. He further informs us that in two very recent Greek court decisions, it has been made clear that this Act does indeed apply to branches of foreign banks doing business in Greece.

However, in what it termed an effort to cooperate as much as possible without jeopardizing the welfare of its employees, First Chicago did advise the IRS that only one account for the Panoses existed, and that during the month of June 1978 the balance was "in the range of 40,000 Greek drachmas" (approximately $1,100 American money).[1]

Thereafter, the IRS filed a petition in the district court to enforce the summons. Upon First Chicago's failure to respond timely to an order to show cause, the court, on May 7, 1980, ordered compliance.

First Chicago then filed a motion to vacate the enforcement order, arguing that disclosure would expose its employees to penal sanctions under Greek law. The motion was supported by a memorandum and copies of two unsworn letters from George V. Tsarouchas, of the law firm of George Lazarimos & Sons, First Chicago's Greek counsel, dated respectively March 9, 1972 and July 1, 1978, interpreting the Greek Bank Secrecy Act (the "Act"). In relevant part, the letters stated that information concerning customer deposits could not lawfully be supplied to American authorities, that the penalty for violation was at least six months in prison, and that such sanction could not be suspended or converted into fines. After receiving the Government's answering memorandum, accompanied by a Library of Congress translation of the Act, the court, without opinion, denied the motion to vacate on September 15, 1980.

A motion for reconsideration was filed by First Chicago on October 3, 1980, stating in part that it had been denied the opportunity to file a reply to the Government's answering memorandum prior to the ruling of September 15. A hearing was held, and the court permitted First Chicago to file a reply. Two sworn affidavits accompanied First Chicago's submission. The first, dated October 24, 1980, by Nick C. Gravenites, the manager of First Chicago's Greek branch for more than five years, stated, "on the basis of his knowledge acquired in the performance of his duties," that the Act was in full

15, 1982, and did not participate in the preparation or approval of this opinion.

1. It is unclear whether this disclosure in itself may give rise to liability under the Greek Bank Secrecy Act.

force and effect at the time the subpoena was issued, that it continued to remain in effect and applied to his employees, and that for more than nine years the Lazarimos firm had served as counsel to the Greek branch. The affidavit further stated that:

> Greek currency (the drachma) is a nonconvertible currency. The foreign exchange control laws of the Republic of Greece at all times relevant to the proceeding at bar restricted the free conversion of Greek currency (drachmas) into another foreign currency and, further, restricted the transmittal of drachmas outside the Republic of Greece.

The second affidavit, by Ralph J. Borkowitz, First Chicago's Records Manager, dated October 24, 1980, stated that records responsive to the IRS request were maintained only in the bank's branch office in Athens, Greece.

In addition, the record shows that attached to First Chicago's reply memorandum was another page, the top half of which was a copy of the listing of the attorneys in the Lazarimos firm (including Mr. Tsarouchas) from the 1980 Martindale-Hubbell Law Directory, Volume VI, p. 3634B, and the bottom half of which was a typed statement, headed "Affidavit," and signed in ink by Laurence C. Franklin, an attorney for First Chicago. The statement purported to certify that the above listing was a true and accurate reproduction. There is no indication that the "Affidavit" was ever notarized, nor is it dated. But we take judicial notice of the accuracy of the copy.

First Chicago also separately furnished the court with a copy of the Act in the original Greek and a translation of the Act certified by the Greek Ministry of Foreign Affairs. Respectively, they are dated, in handwriting or by stamp, as having been secured July 18, 1980 and July 21, 1980.

On November 6, 1980, the district court, without opinion, denied the motion for reconsideration. It granted a stay pending this appeal.

## II. The Merits

First Chicago does not argue that the Government failed to make out a *prima facie* case for enforcement. And indeed there is no suggestion that the summons did not relate to a proper purpose, albeit levy and collection rather than determination of tax liability, that the material sought was irrelevant or already within the Commissioner's possession, or that necessary administrative steps remained to be taken. *Cf. United States v. Powell,* 379 U.S. 48, 57–58, 85 S.Ct. 248, 254–55, 13 L.Ed.2d 112 (1964). Rather, First Chicago urges that cause has been established for denying enforcement, notwithstanding the Government's *prima facie* showing. As we view the case, the arguments raised on appeal fall into two categories. First, whether First Chicago has sufficiently proved that Greek law forbids, under penalty of imprisonment, disclosure of the information in question. Second, whether (if it has so demonstrated) it should nonetheless be compelled to comply with the IRS summons.

### A.

First Chicago maintains that the letters from Attorney Tsarouchas, the affidavits of Branch Manager Gravenites and Records Manager Borkowitz, and the translations of the Act submitted by both sides amply establish that disclosure of the information sought is prohibited by Greek law. In response, the Government asserts that even the minimum formal requirement for proving foreign law has not been satisfied, in that First Chicago has failed to introduce a sworn affidavit by Greek counsel interpreting the Act. The attorney's letters, it points out, are unsworn, and the affidavits in the record are by nonlawyers. Further, the Government asserts there are discrepancies between the Library of Congress' and the Greek Ministry of Foreign Affairs' translations, and that it has not been properly established that the Act was and continues to remain in effect.

We cannot accept the Government's contentions. To begin with, a sworn statement by an attorney—that is to say, a

written expert opinion—is not a prerequisite to proving foreign law. The Federal Rules of Civil Procedure provide in Rule 44.1:

> A party who intends to raise an issue concerning the law of a foreign country shall give notice in his pleadings or other reasonable written notice. *The court, in determining foreign law, may consider any relevant material or source, including testimony, whether or not submitted by a party or admissible under the Federal Rules of Evidence.* The court's determination shall be treated as a ruling on a question of law.

(Emphasis added.) A major treatise interpreting this Rule states:

> [T]he court may consider any material the parties wish to present.... In addition to primary materials and expert testimony, a litigant may present any other information concerning foreign law that he believes will further his cause.... The trial judge is free to accept these items and to give them whatever probative value he thinks they deserve....
>
> ... An expert witness is not required to meet any special qualifications. Indeed he need not even be admitted to practice in the country whose law is in issue.

9 C. Wright & A. Miller, Federal Practice & Procedure § 2444, at 406 (1971). Thus, there can be no doubt that the district court was entitled to consider the letters, affidavits, and translations before it, and could properly have based its determination on that evidence.

■ Because the district court did not issue an opinion detailing its reasons for enforcing the summons, we do not know whether it found that First Chicago had failed to prove that Greek law forbade the disclosure or whether it determined that such a showing was made but was nonetheless insufficient to prevent enforcement. However, this uncertainty does not preclude proper review by this court. A determination concerning the law of a foreign country is a ruling on a question of law, not on a question of fact; it is "freely reviewable [on appeal] and is not limited by the 'clearly erroneous' test." *Id.* § 2446, at 415. A "Court of Appeals is free to make its determination of what the foreign law is, based on its own independent research and analysis." Fed.Proc., L.Ed. § 33.375, at 401–02 (1981) (citing *Kalmich v. Bruno,* 553 F.2d 549 (7th Cir.1977)). We think that review of the evidence before us establishes to a sufficient degree of certainty that First Chicago's release of the summoned information would subject its employees to jeopardy of imprisonment under the Act.

The language of the Act is clear and unambiguous.[2] It provides that an employee of a bank who conveys any information in any manner pertaining to a deposit account is subject to a minimum of six months in prison, that the sentence may not be suspended or converted into a fine, and

---

2. As the Government notes, there are differences between the two translations of the Act now before us. But we do not think they are in any respect substantial.

The Library of Congress translation of the Act, submitted by the Government to the district court, provides in full:

*Article 1:* Deposits in Greek banks are regarded as secret.

*Article 2:*

1. Governors, members of the board, [members of] other collective bodies, or employees of a bank who, in the course of their duties acquire knowledge of deposits, convey any information in any manner are punished with a minimum of 6 months' imprisonment.

The consent or approval of the depositor who has the right to secrecy does not change the punishable nature of the act.

2. Upon conviction for the offense mentioned in the above paragraph, the court cannot order suspension of the penalty nor can it change a conviction to a fine.

3. The persons mentioned in paragraph 1, called upon as witnesses at a civil or criminal trial, cannot be questioned on the secret deposits, even though the depositor consents.

*Article 3:* As an exception, information is allowed on secret bank deposits only by virtue of a specially justified decision of a domestic court, to the extent that the information is regarded as absolutely necessary for searching and punishing offenses which are regarded as felonies committed in Greece.

even the consent of the depositor cannot alter the punishable nature of the disclosure. It is difficult to imagine statutory language more certain in its tenor.

The letters by Attorney Tsarouchas are consistent with a plain reading of the Act. Their probativeness is enhanced by the fact that they were written well before the IRS ever requested information relating to the Panoses, and there is no suggestion they were drafted with an eye toward litigation in this or any other case. So, too, the fact that First Chicago saw fit to retain the Lazarimos firm as counsel for several years, tends to indicate that the work of the firm's attorneys, including Mr. Tsarouchas, was of a competent, reliable quality.

The sworn statement that the information was maintained only in the Athens branch strongly suggests that the information could not be produced without the involvement of persons clearly subject to prosecution under the Act. While better evidence might have been offered to establish that the Act was and remains in effect, and that it applies to foreign banks, we think that the evidence in the record is adequate to support a finding in favor of First Chicago on each of these matters. The statement of Mr. Gravenites seems particularly probative in that as the manager of the Greek branch he would likely be interested in legislation affecting the liabilities and duties of his employees. Finally, it is significant that the Government offers absolutely no proof that First Chicago's employees would not be subject to prosecution under the Greek law.

We hold that First Chicago has adequately proved that the Act forbids, under penalty of imprisonment, disclosure of the information the IRS seeks to compel.

### B.

■ The fact that foreign law may subject a person to criminal sanctions in the foreign country if he produces certain information does not automatically bar a domestic court from compelling production. *See In Re Westinghouse Electric Corp. Uranium Contracts Litigation,* 563 F.2d 992, 997 (10th Cir.1977) (discussing *Societe Internationale*

*v. Rogers,* 357 U.S. 197, 78 S.Ct. 1087, 2 L.Ed.2d 1255 (1958)). Rather what is required is a sensitive balancing of the competing interests at stake. A number of circuits have utilized a test derived from the Restatement (Second) Foreign Relations Law of the United States (1965). *See United States v. Vetco Inc.,* 644 F.2d 1324, 1331 (9th Cir.1981), and cases cited therein. Section 40 of the Restatement provides:

§ 40. Limitations on Exercise of Enforcement Jurisdiction

Where two states have jurisdiction to prescribe and enforce rules of law and the rules they may prescribe require inconsistent conduct upon the part of a person, each state is required by international law to consider, in good faith, moderating the exercise of its enforcement jurisdiction, in light of such factors as

(a) vital national interests of each of the states,

(b) the extent and the nature of the hardship that inconsistent enforcement actions would impose upon the person,

(c) the extent to which the required conduct is to take place in the territory of the other state,

(d) the nationality of the person, and

(e) the extent to which enforcement by action of either state can reasonably be expected to achieve compliance with the rule prescribed by that state.

■ Applying the test just set forth, we conclude that it was an abuse of discretion to enter an unqualified order compelling production, particularly where there is no indication of the rationale of the decision.

It seems clear that the critical act of initially conveying the information would take place in Greece (factor (c)), and highly probable that persons of Greek nationality would make the initial disclosure (factor (d)). Factor (b), extent and nature of hardship, bears great weight. Those acting in Greece would be exposed to criminal liability, not merely a fine, but imprisonment. Comment c to § 40 of the Restatement observes:

In determining whether to refrain from exercising jurisdiction, a state must give special weight to the nature of the penal-

ty that may be imposed by the other state. A state will be less likely to refrain from exercising its jurisdiction when the consequence of obedience to its order will be a civil liability abroad. Similarly, a state will be less likely to exercise jurisdiction, where there is a possibility that obedience to its command may put an alien in jeopardy under the criminal laws of his own country, than it will if one of its own nationals may be subjected to foreign liability under similar circumstances.

We think it significant in weighing the hardship factor that the bank employees who would be exposed to penalty and First Chicago, which would be ordering its Greek employees to act unlawfully, are involved only as neutral sources of information and not as taxpayers or adverse parties in litigation.

Although the interest of the United States in collecting taxes is of importance to the financial integrity of the nation, the interest of Greece, served by its bank secrecy law is also important, and so conceded by Government counsel (factor (a)). In connection with this factor it seems significant that the amount of tax liability of the Panoses has already been determined, the information is sought as a step toward levy and collection, the amount of the asset is comparatively small, and there are legal restrictions on the conversion and export of Greek funds.

We note further that Restatement (Second) of the Foreign Relations Law of the United States is being revised, and the substance of § 40, with some modification, is being reflected in § 403 of Tentative Draft No. 2 and §§ 419 and 420 of Tentative Draft No. 3, Foreign Relations Law of the United States (Revised).

Section 419(1) provides that "A person may not ordinarily be required by authority of the United States ... to do an act outside the United States prohibited by the law of the state where the act is to be done." Section 420 deals specifically with court ordered production of information located outside the United States. Section 420(2) provides that "If disclosure of information located outside the United States is prohibited by a law or regulation of the state in which the information or prospective witness is located ... the person to whom the order is directed may be required by the court to make a good faith effort to secure permission from the foreign authorities to make the information available."

In the case before us, we note that Article 3 of the Greek Act provides what seems to be a closely limited exception. The question whether this exception would be liberally construed in a case like the present does not appear to have been explored, and it seems to us that a reasonable, good faith effort to explore it might fairly be imposed on First Chicago. The furnishing of information by the Greek branch to the home office may possibly not be considered an offense, and a reasonable, good faith effort to determine that question of law might fairly be imposed on First Chicago. If the information came into the possession of First Chicago employees in the United States without violation of law in Greece, the result of the balancing test might well be different.

First Chicago tells us that the United States and Greece have a treaty, Convention Between The United States of America And The Kingdom Of Greece For The Avoidance Of Double Taxation And The Prevention Of Fiscal Evasion With Respect To Taxes On Income, entered into on February 10, 1950 and ratified in 1953, and that the IRS maintains a regional representative in Europe to coordinate efforts to collect delinquent taxes through diplomatic means. We are not aware of the Government's position as to the relevancy of either of these facts to the problem with which we are confronted.

On remand, the district court is directed to conduct further inquiry consistent with this opinion and to consider whether to issue an order requiring First Chicago to make a good faith effort to receive permission from the Greek authorities to produce the information specified in the summons.

We are aware that the Eleventh Circuit has reached a different result in a case involving a bank which was apparently a

neutral source of information, as here. *In re Grand Jury Proceedings,* 691 F.2d 1384 (11th Cir.1982). In that case, however, the court of appeals had the benefit of findings by the district court, including a finding that the bank had not made a good faith effort to comply with the subpoena. The information was sought by a grand jury conducting a tax and narcotics investigation, so that the interest of the United States in the grand jury process of investigation and enforcement of its criminal laws was involved as well as its interest in determination and collection of taxes. There was evidence, though contested, that all banking transactions for the foreign branch could be handled by the United States branch. The foreign law (Bahamian) was different from the Greek law involved here in that disclosure with the consent of the customer would not be a criminal offense, and the power of a Bahamian court to permit disclosure did not appear to be as strictly limited. We consider the decision distinguishable.

The order appealed from is REVERSED, and the cause REMANDED for further proceedings.