**In re ANSCHUETZ & CO.,
GmbH, Petitioner.**

No. 84–3286.

United States Court of Appeals,
Fifth Circuit.

March 7, 1985.

---

Milling, Benson, Woodward, Hillyer, Pierson & Miller, Robert S. Dietz, Neal D. Hobson, New Orleans, La., for appellant.

Derek A. Walker, Campbell E. Wallace, Kenneth J. Servay, Paul A. Nalty, New Orleans, La., for Compania.

Peter Heidenberger, Washington, D.C., George Arceneaux, Jr., Judge, U.S.D.C., New Orleans, La., for amicus curiae, Federal Republic of Germany.

Wm. A. Porteous, III, New Orleans, La., for Landis.

John M. Rogers, Appellate Staff, Civ. Div., Justice Dept., Washington, D.C., for U.S.A.

**604**

Cornelius G. Van Dalen, New Orleans, La., for MS. River.

James O.M. Womack, New Orleans, La., H. Lee Lewis, Jr., Houston, Tex., for Boh Bros.

Before BROWN, TATE, and HIGGINBOTHAM, Circuit Judges.

JOHN R. BROWN, Circuit Judge:

### Introduction

Anschuetz & Co., GmbH (Anschuetz), third party defendant in the United States District Court for the Eastern District of Louisiana, petitioned this court pursuant to Rule 21(a) of the Federal Rules of Appellate Procedure for a writ of mandamus ordering the district judge to vacate or stay various orders directing Anschuetz to (i) produce 11 or more of its employees for depositions in Germany; (ii) produce documents in New Orleans now located in Germany; and (iii) pay attorney's travel expenses for preliminary depositions in Kiel, Germany. Anschuetz opposes all of the foregoing as a violation of the Multilateral Convention on the Taking of Evidence Abroad in Civil and Commercial Matters, done 18 March 1970 [1972], 23 U.S.T. 2555, T.I.A.S. No. 7444 (Hague Convention).[1]

■ After much reflection, we conclude that the Hague Convention does not supplant the application of the discovery provisions of the Federal Rules over foreign, Hague Convention state nationals, subject to *in personam* jurisdiction in a United States Court.

## I.

In January of 1979, the M/V POLA DE LENA, then owned by Naviera Santa Catalina and chartered to Compania Gijonesa de Navegacion S.A.,[2] collided with the Gretna Ferry Landing and two ferry boats owned by the Mississippi River Bridge Authority. The Mississippi River Bridge Authority then filed suit against the M/V POLA DE LENA and Gijonesa. The suit was later consolidated with another case and eventually included as plaintiff the Mississippi River Bridge Authority, owner of the facility and the two ferry boats, Landis Construction Company, and Boh Brothers, Inc., contractors responsible for construction work on the Landing. Settlements have been reached with the Mississippi River Bridge Authority and with Landis—Gijonesa and Anschuetz reserving all rights against each other. Boh Brothers remains a party.

■ Gijonesa filed a third party complaint against Anschuetz, a German corporation, alleging the failure of a steering device designed by Anschuetz as a contributing cause of the accident. Anschuetz denied the jurisdiction of the court, but the district court ruled that Anschuetz was subject to the court's jurisdiction pursuant to the Louisiana long-arm statute.[3]

---

1. The Convention was adopted in October of 1968 to provide a uniform system of discovery in foreign jurisdictions. It was based on the framework established by the Multilateral Convention on the Service Abroad of Judicial and Extrajudicial Documents in Civil and Commercial Matters, done 15 November 1965, [1969], 20 U.S.T. 361, T.I.A.S. No. 6638. The United States ratified the treaty in 1972. West Germany's participation did not take effect until June 1979.

The Hague Convention is presently in force among Cyprus, Czechoslovakia, Denmark, Finland, France, Germany, Gibraltar, Israel, Luxembourg, Norway, Portugal, Singapore, Sweden, the United Kingdom, and the United States.

2. These two companies have since merged and the surviving defendant and third party plaintiff will be referred to as Gijonesa.

3. La.Rev.Stat.Ann. § 13.3201 (West 1968). Foreign-based companies that choose to conduct business within the United States are, of course, amenable to the jurisdiction of American courts and are simply not clothed with the immunity of the foreign government under whose laws they may have been organized. *See, e.g., United States v. First National City Bank*, 396 F.2d 897, 900–01 (2d Cir.1968); *Graco, Inc. v. Kremlin, Inc.*, 101 F.R.D. 503, 521 (E.D.Pa.1984); *cf. Societe Internationale v. Rogers*, 357 U.S. 197, 211–12, 78 S.Ct. 1087, 1095–96, 2 L.Ed.2d 1255 (1958). Even foreign governments may be sued in American courts for actions undertaken in their commercial capacity in the United States. *See generally* 28 U.S.C.A. §§ 1330, 1602 *et seq.; Verlinden B.V. v. Central Bank of Nigeria*, 461 U.S. 480, 103 S.Ct. 1962, 1968–69, 76 L.Ed.2d 81

Anschuetz then sought to bring in third party Empressa Nacional De Bazan (Bazan), the shipyard in Spain which had built the vessel and installed the steering device. Bazan also denied the jurisdiction of the Louisiana district court and all proceedings were halted for approximately two years while the jurisdictional fight with Bazan went forward.[4] Eventually the district court ruled that Bazan was not subject to the court's jurisdiction.

In October of 1983, Gijonesa amended its complaint to allege product liability claims against Anschuetz and embarked on a round of discovery involving interrogatories, requests for production, and notices of depositions. In January of 1984 Anschuetz moved for a protective order with respect to the interrogatories, requests for production of documents, and notices of deposition. Anschuetz argued that the discovery was overbroad and should be limited in scope. Anschuetz also argued that Gijonesa was afforded the opportunity to examine Anschuetz personnel at the 1981 depositions in Spain and should not be entitled to "another bite at the apple." In its motion Anschuetz did not rely on the Hague Convention. Moreover, the motion stated that "Anschuetz has offered to have Gijonesa's counsel or other representative examine Anschuetz' files in Germany."

In February of 1984, the United States Magistrate, following two discovery conferences, ordered Anschuetz to comply with most of Gijonesa's discovery demands. Anschuetz witnesses were apparently examined in Germany in early April of 1984. On April 18, Anschuetz moved for a protective order based on the Hague Convention to stop the depositions scheduled to take place in Germany on May 2, 1984. The magistrate denied this motion. Anschuetz appealed to the district judge. The judge upheld the magistrate's denial of the motion. He also refused a § 1292(b) petition for certification. We stayed the magistrate's discovery order pending resolution of the alleged conflict between the Hague Convention and the Federal Rules of Civil Procedure. In order that all relevant views be before us, we invited amicus curiae briefs from the Federal Republic of Germany and our own Department of Justice.[5]

By way of summary, the German government has stated that the taking of oral depositions in Kiel, Germany, and the production of documents located in Kiel, would be a violation of German sovereignty unless the order is transmitted according to a letter of request as specified in the Hague Convention. The Department of Justice contends that the Hague Convention is not the exclusive method of obtaining evidence and that the district court's order regarding document production does not conflict with any treaty obligation of the United States under the Convention. The Department, however, urges a careful comity analysis be employed by courts before departing from the mechanisms of the Convention. It is also the Department's position that a district court's ordering of depositions to be conducted on German soil is a violation of the international law obligations of the United States.

## II.

Since this is the first time a circuit court has considered the interplay between the Hague Convention and the Federal Rules, we will examine the relevant cases in a

---

(1983); *Ministry of Supply, Cairo v. Universe Tankships, Inc.*, 708 F.2d 80, 84 (2d Cir.1983); *Texas Trading & Milling Corp. v. Federal Republic of Nigeria*, 647 F.2d 300, 307–15 (2d Cir. 1981), *cert. denied*, 454 U.S. 1148, 102 S.Ct. 1012, 71 L.Ed.2d 301 (1982), and if amenable to United States substantive law, are presumably also subject in those proceedings to American procedural law. *International Society for Krishna Consciousness v. Lee* [No. 75 Civ. 5388 (Sept. 11, 1984 S.D.N.Y.)].

4. In November and December 1981, pursuant to an order of the United States Magistrate, Anschuetz and Gijonesa deposed a number of persons, including employees of Anschuetz and Gijonesa, in Spain. Spain is not a party to the Hague Convention.

5. The court wishes to express its thanks to both the German Government and the Department of Justice for the filing of briefs detailing their respective positions on the Hague Convention.

systematic fashion in order that our line of reasoning be clear for all to follow.

(a)

Anschuetz, in effect, argues that international comity is promoted and the judicial sovereignty of West Germany preserved, if the discovery orders and sanctions against it are voided and Gijonesa is forced to conduct its discovery under German internal law and procedure following the Hague Convention.[6] In support of its argument, Anschuetz cites: *Philadelphia Gear Corp. v. American Pfauter Corp.*, 100 F.R.D. 58 (E.D.Pa.1983); *Schroeder v. Lufthansa German Airlines*, No. 83C1928 (N.D.Ill. Sept. 15, 1983); *Volkswagenwerk, A.G. v. Superior Court*, 123 Cal.App.3d 840, 176 Cal.Rptr. 874 (1981); *Pierburg GmbH & Co. v. Superior Court*, 137 Cal.App.3d 238, 186 Cal.Rptr. 876 (1982). These cases have required litigants to rely upon the Hague Convention for pretrial discovery, reasoning that international comity is thereby promoted. *Schroeder* and *Philadelphia Gear* relied heavily on the two decisions of the California Court of Appeals.

In *Volkswagenwerk*, a products liability suit arising out of an automobile accident, the trial court entered a detailed discovery order providing for on-site inspection of Volkswagen's plant in Germany. In its careful opinion, the California Court of Appeals directed that the trial court vacate its order, holding that the plaintiff should be required to proceed under the Hague Convention not as a matter of international law, but as a matter of judicial self-restraint. The court's primary concern was the on-site discovery proceeding which the trial court had ordered to take place within West Germany. In *Pierburg*, another automobile products liability suit where the

court denied discovery requests, the court relied heavily on *Volkswagenwerk* and an earlier case, *Volkswagenwerk A.G. v. Superior Court*, 33 Cal.App.3d 503, 109 Cal. Rptr. 219 (1973). These cases considered a trial court's order that the discovery proceedings take place in Germany. In essence, the California Court of Appeals ruled that allowing plaintiffs to serve interrogatories on a West German defendant would destroy the Hague Convention.

We do not find these cases to be well reasoned. Indeed, none of the cases relied upon by Anschuetz indicate in any way that the purpose of the Convention was to restrict the exercise of *in personam* jurisdiction by United States courts over foreign nationals properly before it. Anschuetz' interpretation of the treaty, taken to its logical conclusion, would give foreign litigants an extraordinary advantage in United States courts. Insofar as Anschuetz seeks discovery it would be permitted the full range of free discovery provided by the Federal Rules. But when a United States adversary sought discovery, this discovery would be limited to the cumbersome procedures and narrow range authorized by the Convention. Further, we believe that requiring domestic litigants to resort to the Hague Convention to compel discovery against their foreign adversaries encourages the concealment of information—a result directly antithetical to the express goals of the Federal Rules and the Hague Convention which aim to encourage the flow of information among adversaries.

(b)

Gijonesa is on more solid ground in its contention that the Hague Convention is not exclusive.[7] In *Cooper Industries v.*

---

**6.** The Convention procedure for discovery is to send a "letter of request" to a designated judicial authority in Germany which would then execute the request with the aid of its particular compulsory measures if necessary. Article 9 of the Convention states that such request "shall be executed expeditiously."

**7.** Indeed, the federal courts which have considered the issue since the filing of supplemental briefs in the case before us have all agreed that the Hague Convention is not the exclusive

method for obtaining discovery from a foreign party in domestic litigation. While some of these cases have taken the position that a comity balancing is required before resorting directly to the Federal Rules, all agree that the Federal Rules remain viable against a foreign party; *Laker Airways, Ltd. v. Pan American World Airways*, 103 F.R.D. 42, 49 (D.D.C.1984); *McLaughlin v. The Fellows Gear Shaper Co.*, 102 F.R.D. 956, (1984 E.D.Pa.); *International Society for Krishna Consciousness, Inc. v. Lee*, 425 F.Supp.

*British Aerospace,* 102 F.R.D. 918 (S.D.N.Y.1984), the plaintiff sought the production of certain documents that the defendant asserted were not in its possession. The court ruled that the defendant waived any right to claim protection under the Hague Convention because the defendant had made *no effort to seek protective relief* when the discovery request was served. After failing to comply with the initial discovery demand, defendant raised the argument that the discovery of the documents in the hands of its British affiliate must be conducted under the procedures of the Hague Convention—reasoning that the British affiliate was a foreign corporation and not a party to the action. The court followed established precedent when it held that "[d]ocuments need not be in the possession of a party to be discoverable, they need only be in its custody or control." [8]

■ In *Cooper Industries* the court ruled that the documents were within the defendant's custody because the defendant sold and serviced planes to which the documents, mostly service manuals and blueprints, related. Essentially the defendant was the distributor and servicer in the United States of planes manufactured by its British affiliate. The court stated that "the documents plaintiffs seek all relate to the planes that defendant works with every day; it is inconceivable that defendant would not have access to these documents and the ability to obtain them for its usual business." [9]

As the *Cooper* court pointed out, "the fact that documents are situated in a foreign country does not bar their discovery." *Marc Rich & Co. v. United States,* 707 F.2d 663, 667 (2d Cir.1983) (grand jury investigation), *cert. denied,* —— U.S. ——, 103 S.Ct. 3555, 77 L.Ed.2d 1400; *United States v. First National City Bank,* 396 F.2d 897, 900–01 (2d Cir.1968) (grand jury investigation). The court in *Cooper,* also observed:

> The production demanded here does not infringe on British sovereignty as it calls merely for documents, not a personal appearance. Defendant cannot be allowed to shield crucial documents from discovery by parties with whom it has dealt in the United States merely by storing them with its affiliate abroad. Nor can it shield documents by destroying its own copies and relying on customary access to copies maintained by its affiliate abroad. If one defendant could so easily evade discovery, every United States company would have a foreign affiliate for storing sensitive documents.

*Cooper* at 920.

One of our difficulties with Anschuetz' argument was highlighted by the court in *Murphy v. Reifenhauser KG Maschinenfabrik,* 101 F.R.D. 360 (1984). The court was asked to consider the applicability of the Hague Convention after the defendant had already answered two sets of interrogatories without raising any effect of the Convention.[10] As the court in *Murphy* stated, "the Convention procedure does not appear to be trouble free. Perhaps its most glaring fault ... is that Germany has exercised its right not to execute letters of request issued for the purpose of obtaining pretrial discovery of documents as known in common law countries." *Murphy* at 361.

The court in *Lasky v. Continental Products Corp.,* 569 F.Supp. 1227 (E.D.Pa.1983),

---

681 [No. 75 Civ. 5388 (Sept. 11 (1984) S.D. N.Y.) ]; *Adidas (Canada) Ltd. v. S/S SEATRAIN BENNINGTON,* [80 Civ. 1911 (May 30, 1984) S.D.N.Y.].

**8.** *Cooper Industries v. British Aerospace,* 102 F.R.D. 918, 919 (S.D.N.Y.1984); *Fleming v. Gardner,* 84 F.R.D. 217, 217–28 (E.D.Tenn.1979); *Hubbard v. Rubbermaid, Inc.,* 78 F.R.D. 631, 635–37 (D. Md. 1978); *Advance Labor Service, Inc. v. Hartford Accident and Indemnity Company,* 60 F.R.D. 632, 633–34 (N.D.Ill.1973).

**9.** *Cooper Industries v. British Aerospace,* 102 F.R.D. 918, 919–20 (S.D.N.Y.1984). The documents and records that a corporation requires in the normal course of its business are presumed to be in its control unless the corporation proves otherwise. Any other rule would allow corporations to improperly evade discovery. *In Re Ironclad Manufacturing Co.,* 201 Fed. 66, 68 (2d Cir.1912).

**10.** Whether the Hague Convention must be timely asserted or is thereby waived is a question we do not decide.

began its analysis of the effect of the Convention on the conduct of domestic lawsuits seeking discovery abroad with the observation that the Convention is not necessarily inconsistent with the Federal Rules of Civil Procedure. The *Lasky* court reasoned that the language of the Convention is permissive rather than mandatory.[11] From this observation the court concluded that foreign parties and domestic parties are equally subject to the Federal Rules of Civil Procedure so long as personal jurisdiction is gained. Thus, discovery could go forward under the federal rules and the Convention would be applicable only if compliance with the requested discovery would violate foreign law or otherwise impinge upon foreign sovereignty. 569 F.Supp. at 1228–29.[12]

### (c)

We agree with the court in *Murphy* when it said "although the courts that have considered the issue have come to different conclusions as to the ultimate effect of the Convention, they argue that compliance is

11. The court in *Lasky* cited Article 27 of the Convention in support of its conclusion that the Convention is permissive. Article 27 states that the Convention "shall not prevent a contracting state from ... permitting by internal law or practices, methods of taking evidence other than those provided for in this Convention." We find this language somewhat ambiguous, not necessarily a license to compel alternative modes of discovery.

12. Of course, the federal rules and a federal treaty are essentially on equal footing. The Federal Rules of Civil Procedure have the force and effect of federal statutes. *United States for Use of Tanos v. St. Paul Mercury Insurance Co.*, 361 F.2d 838 (5th Cir.1966), *cert. denied*, 385 U.S. 971, 87 S.Ct. 510, 17 L.Ed.2d 435 (1966); *Association for Retarded Citizens of North Dakota v. Olsen*, 561 F.Supp. 495 (D.N.D.1982), affirmed and modified, 713 F.2d 1384 (8th Cir.1983). In many circumstances, conflict of such laws may be resolved by applying a last in time rule causing the most recent law to supersede. *Vorhees v. Fischer and Kleche*, 697 F.2d 574 (4th Cir.1983); *United States ex rel. Martinez-Angosto v. Mason*, 232 F.Supp. 102 (S.D.N.Y. 1964). In this instance, however, where ratification of the Hague Convention occurred after adoption of the federal rules, but before the 1980 and 1983 amendments to those rules, none of which mentioned the Convention, we decline to make such an apparently arbitrary ruling.

not mandatory but rather a matter of comity." *Murphy* at 363. The cases cited by Anschuetz may be further explained by the possibility that the California Court of Appeals felt more obliged to yield to the supremacy of a federal treaty over state laws, *see Pierburg*, 186 Cal.Rptr. at 882, whereas the *Lasky* and *Murphy* courts were confronted, as we are, with the federal rules and a federal treaty on an essentially equal footing.

■ Moreover, the scope of the discovery sought in the California state court cases was significantly broader—thus creating a greater potential for intrusion upon German sovereignty—than in the case before us. In *Pierburg & Volkswagenwerk* the requesting party sought on-site inspections, photography, depositions, informal interviews, and access to the defendant's technical library. In *Lasky*, as here, plaintiffs seek primarily written answers to interrogatories and production of certain documents.[13]

This distinction is significant in deciding Anschuetz' comity claim because comity is

13. We are aware, of course, that the district court in sustaining the magistrate's ruling, has ordered depositions. But where the district court's order is an order that discovery will be compelled only in the United States, there can be no invasion of German sovereignty. Depositions given voluntarily by German nationals for their convenience on German soil, when subject to a district court's *in personam* jurisdiction, do not implicate the Hague Convention. The district court clearly realized this:

COURT: Having jurisdiction upon and over Anschuetz, then this triggers the usual Rules of Federal Civil Procedure.

\* \* \* \* \* \*

COURT: I have personal jurisdiction over Anschuetz. Anschuetz is obliged to designate those persons who are its agents or officers for 30(b)(6) purposes, and to provide them for the taking of a deposition. In an effort to accommodate Anschuetz and to minimize expenses, the depositions were set in Germany. Anschuetz could just as well be required to produce that corporate officer or other witness in the United States.

\* \* \* \* \* \*

COURT: We have a party, we have jurisdiction, and under Rule 34 that party is required to produce documents which are in its possession, custody or control. I don't think there is any doubt but that An-

largely a function of the relative interests between overlapping jurisdictions.

> Comity, in the legal sense, is neither a matter of absolute obligation, on the one hand, nor of mere courtesy and good will, upon the other. But it is the recognition which one nation allows within its territory to the legislative, executive or judicial acts of another nation, having due regard both to international duty and convenience, and to the rights of its own citizens or of other persons who are under the protection of its laws.

*Hilton v. Guyot*, 159 U.S. 113, 163–64, 16 S.Ct. 139, 143, 40 L.Ed. 95 (1895); *Laker Airways, Ltd. v. Sabena, Belgian World Airlines*, 731 F.2d 909, 937 (D.C.Cir.1984); *United States v. First National Bank*, 699 F.2d 341, 345–47 (7th Cir.1983); *United States v. Vetco, Inc.*, 691 F.2d 1281, 1288–91 (9th Cir.), *cert. denied*, 454 U.S. 1098, 102 S.Ct. 671, 70 L.Ed.2d 639 (1981).

■ As the court in *Murphy* noted, "[t]he United States has a clear interest in facilitating the manner in which foreign citizens doing business in the United States are available for litigation here. West Germany has a clear interest in protecting the integrity of its judicial rights and procedures, but we find that interest less compelling in this instance than, for example, where a non-party witness is sought for deposition or where the scope of discovery

sought involves more intrusive methods." *Murphy* at 373. This reasoning applies fully to Anschuetz' petition for mandamus. Having been found reachable under the Louisiana long-arm statute, Anschuetz is subject to the Federal Rules discovery provisions.

The Federal Rules of Civil Procedure provide for the taking of deposition evidence abroad in a manner stipulated in writing by the parties;[14] on notice before a person authorized to administer oaths at the place of the examination, either under a local law or American law;[15] or before a person specially commissioned by the court to administer the oath.[16] *See* 4 Moore's *Federal Practice* ¶¶ 28.03–.04, .06. Depositions from unwilling witnesses may be taken pursuant to the provisions authorizing the issuance of letters rogatory.[17]

Under the Hague Convention, papers may be served, interrogatories propounded, and other documents necessary for the prosecution of a trial obtained from one contracting nation by another.[18] The Convention specifies that when a party fails to secure a witness' voluntary cooperation by notice or commission procedure, it may seek discovery via a letter rogatory—a letter of request from an American judge for the assistance of foreign judicial authority.[19]

Although the Hague Convention provides a mechanism whereby the recipient nation's

---

schuetz's documents involved in this matter are under its control. The fact that the documents are in West Germany is, to this Court, immaterial.

\* \* \* \* \* \*

**14.** F.R.Civ.P. 29.

**15.** F.R.Civ.P. 28(b)(1).

**16.** F.R.Civ.P. 28(b)(2).

**17.** F.R.Civ.P. 28(b)(3). Although the cooperation of an unwilling foreign deponent is insured by local courts acting upon a letter rogatory, execution of the letter in the first instance rests upon principles of international comity, and is in that sense discretionary with the issuing American court. *See* 4 Moore's *Federal Practice, supra,* ¶ 28.05.

**18.** For a more detailed description of procedures under the Hague Evidence Convention,

*see* Note, Taking Evidence Outside of the United States, 55 B.U.L.R. 368, 381–85 (1975).

**19.** As noted, the principal purpose of the Convention was to alleviate difficulties encountered by litigants in common law countries. *See, e.g.,* Amram, 55 A.B.A.J. at 652; United States Delegation Report, 8 International Legal Materials at 806–08; Hastings L.J. at 1251; B.U.L.Rev. at 380. The focus of concern was that such litigants often needed the cooperation of the foreign government in order to obtain the requested discovery and, in the absence of some binding agreement requiring such assistance, their ability to obtain the information in question would be severely hampered or entirely stymied.

This problem would, of course, only occur with respect to discovery procedures actually undertaken in the foreign country, and most typically against an individual or entity not sub-

executing authority is required to assist an American court with such compulsory force as its own courts could exercise in a pre-trial evidentiary situation,[20] numerous exceptions to this international obligation do exist[21] which potentially bar a letter of request from being successfully executed at all.[22] For example, foreign judicial cooperation may be withheld altogether if the discovery assistance requested is deemed prejudicial to state sovereignty.[23] Furthermore, even when discovery abroad is available, the breadth of evidence ordinarily expected from a fullfledged American deposition might be restricted for any number of reasons: the foreign states' own procedures might limit or foreclose cross-examination, full participation of counsel might not be allowed, or a verbatim record might not result, thus limiting admissibility of the testimony in an American court.[24]

In *Graco v. Kremlin, Inc.*, 101 F.R.D. 503, 519 (1984), the court stated:

---

ject to the jurisdiction of the American court and therefore not amenable to any form of American judicial compulsion. Not surprisingly, then, the convention itself is entitled "Convention on the Taking of Evidence Abroad ..." and is, on its face, addressed solely to the procedures to be used for the gathering of evidence within the borders of countries other than those in which the legal proceeding is pending.

That the Convention was not intended to limit the application of any country's laws with respect to the obtaining of evidence within its geographic jurisdiction is further underscored by the repeated statements found both in the body of the Convention and in the commentaries of its drafters that it was intended to supplement or improve available methods of discovery and not to limit them. The Convention preamble states its purposes as being "to facilitate the transmission and execution of letters of request and to further the accommodation of different methods which [the signatory states] use for this purpose...." Such letters of request, both under the Federal Rules of Civil Procedure, and under other and prior authority, have been used to obtain foreign government assistance, where necessary, in the obtaining of information abroad. *See, e.g., Leasco Data Processing Equipment Corp. v. Maxwell*, 63 F.R.D. 94 (S.D.N.Y. 1973); *United States v. Paraffin Wax*, 23 F.R.D. 289 (E.D.N.Y.1959); *Branyan v. Koniklijke Luchtvaart Maatschappij*, 13 F.R.D. 425 (S.D.N.Y.1953); *De Villeneuve v. Morning Journal Association*, 206 Fed. 70 (S.D.N.Y.1913). No authority has been suggested for the notion that letters of request were ever used or requested to be used to enable litigants to obtain information within the very country in which they are litigating.

If resort to letters rogatory for domestic discovery was not necessary before the Convention, it assuredly is not required after its ratification. As noted by Philip Amram, who was the reporter for the committee that drafted the Convention, the Convention "makes no major changes in United States procedure and requires no major changes in United States legislation or rules." *Amram*, 55 A.B.A.J. at 655. *See also* the Report of the United States Delegation, noting that "the Convention is a major contribution to the elimination of formal and technical obsta-

cles to securing evidence abroad" and that its advantages will "far outweigh the minor adjustments and procedure that may be required." 8 Int'l Legal Materials at 820. *International Society for Krishna Consciousness v. Lee* [No. 75 Civ. 5388 (Sept. 11, 1984 S.D.N.Y.) ].

**20.** Art. 10 of the Hague Convention states:

In executing a letter of request the requested authority shall apply the appropriate measures of compulsion in the instances and to the same extent as are provided by its internal law for the execution of orders issued by the authorities of its own country or of requests made by parties in internal proceedings.

**21.** Art. 12(b) of the Convention, for example, specifies that execution of a letter of request may be refused if "the state addressed considers that its sovereignty or security would be prejudiced thereby." Art. 23 of the Convention further states that any contracting state may "declare that it will not execute letters of request issued for the purpose of obtaining pretrial discovery of documents as known in common law countries." This reservation, inserted at the request of the United Kingdom, has been made by every contracting state except the United States. *See* Report on the Work of the Special Commission on Operation of the Convention of 18 March 1970 on the Taking of Evidence Abroad in Civil or Commercial Matters, reprinted in 17 I.L.M. 1425, 1427 (1978).

**22.** Edwards, *Taking of Evidence Abroad in Civil or Commercial Matters*, 18 Int'l. & Comp. L.Q. 646 (1969).

**23.** Hague Evidence Convention, Art. 12(b). Edwards, *Taking of Evidence Abroad in Civil or Commercial Matters*, 18 Int'l. & Comp. L.Q. 646 (1969); Report of the United States Delegation to the Eleventh Session of the Hague Conference on Private International Law, 8 Int'l. Legal Materials 785, 804, 806 (1969).

**24.** *See* Borell & Boyd, Opportunities for and Obstacles to Obtaining Evidence for Use in Litigation in the United States: in France, 13 Inter-

It cannot be denied that foreign displeasure with American discovery procedures played some part in shaping the convention, but it is a mistake, the court believes, to view the convention as an international agreement to protect foreign nationals from American discovery when they are parties properly before American courts. Two important purposes of an international convention of this type relate to discovery of nonparties, and would justify the convention's existence regardless of how the convention is deemed to apply with respect to parties before the court. First, a nonparty witness may be willing to be deposed at home, but may be unwilling to travel to the country in which the litigation is proceeding. Since some countries would consider the taking of evidence within their borders a usurpation of judicial prerogative, an international agreement setting up a framework for seeking and granting permission has great value, allowing evidence to be taken without afront to local authorities. Second, an unwilling non-party witness simply cannot be reached, if outside the court's jurisdiction, unless authorities in the witness' state use their authority to compel the giving of evidence. An international agreement provides a framework for the invocation of a foreign authority's compulsory powers, making accessible evidence which otherwise would not have been accessible. A multistate convention, rather than a series of two state agreements, confers the added benefit of standardized procedures.

*Graco* at 519–20.

We agree with the court's conclusion in *Graco* that "the convention was [not] intended to protect foreign parties, over whom an American court properly has jurisdiction, from the normal range of pretrial discovery available under the Federal Rules of Civil Procedure." We find particularly apt the court's observation that the Convention does not require deference to a foreign country's judicial sovereignty over documents, people, and information—if this is really how civil law judicial sovereignty is understood—when such documents are to be produced in the United States. As *Graco* held, "discovery does not 'take place within [a state's] borders' merely because documents to be produced somewhere else are located there. Similarly, discovery should be considered as taking place here, not in another country, when interrogatories are served here, even if the necessary information is located in the other country." [25]

In essence, matters preparatory to compliance with discovery orders in the United States, even where the preparatory acts occur in foreign nations, do not constitute discovery in the foreign nation as addressed by the Hague Convention. As the court reasoned in *Adidas (Canada) Ltd. v. S/S SEATRAIN BENNINGTON*, 80 Civ. 1911 (May 30, 1984 S.D.N.Y.):

What is required of Les Toles on French soil is certain acts preparatory to the giving of evidence. It must select appropriate employees to give depositions in the forum state: likewise it must select the relevant documents which it will reveal to its adversaries in the forum state. These acts do not call for French judicial participation. If Les Toles were preparing to bring litigation against United States adversaries in the United States courts, it would perform the same acts of selecting employee witnesses and evidentiary documents from its files without participation by an French judicial authority. In no way do those acts affront or intrude on French sovereignty.

---

national Law 35, 40–41 (1979); *see* Carter, Obtaining Foreign Discovery and Evidence for Use in Litigation in the United States: Existing Rules and Procedures, 13 International Law 5, 15 (1979).

**25.** The logic of this position seems equally compelling with respect to people residing in another country. If they are subject to the court's jurisdiction, or if the court can compel a party to produce them under F.R.C.P. 37(d), then the court may order that they be produced for deposition; and violation of the other country's judicial sovereignty can be avoided by ordering that the deposition take place outside the foreign country.

The true ramifications of this discovery dispute extend far beyond the issue at stake in the case immediately before us. International commercial litigation involving nationals of signatories to the convention is not at all infrequent. Such litigation does not generally require a court to order that foreign property be inspected, or that a deposition take place in a foreign country—but interrogatories and document requests, directed at information or evidence located in the foreign country, are a necessary and routine part of almost every case. Requiring that such discovery be processed through foreign authorities would work a drastic and very costly change in the handling of this type of litigation. We agree with the *Graco* court's conclusion that "nothing in the text of the Convention remotely suggests that the Convention was intended to have this wide ranging effect."

It seems patently obvious that if the Convention were interpreted as preempting interrogatories and document requests, the Convention would really be much more than an agreement on taking evidence abroad. Instead, the Convention would amount to a major regulation of the overall conduct of litigation between nationals of different signatory states, raising a significant possibility of very serious interference with the jurisdiction of United States courts.

> The solicitude for the judicial sovereignty of civil law countries shown in *Schroeder, Philadelphia Gear,* and *Pierburg* apparently is unmatched by any recognition that they are suggesting a startling limitation on the sovereign powers of this country, as expressed through its courts. Treating the Convention procedures as exclusive would make foreign authorities the final arbiters of what evidence may be taken from their nationals, even when those nationals are parties properly within the jurisdiction of an American court.

*Graco* at 522.

We find that Article 23 illustrates well that the text of the Convention is not consistent with the broad interpretation given in *Schroeder, Philadelphia Gear,* and *General Electric,* and that its provisions plainly are inadequate to sustain the burden which Anschuetz' broad interpretation would place upon them. Article 23 states in full:

> a contracting state may at the time of signature, ratification or accession, declare that it will not execute letters of request issued for the purpose of obtaining pretrial discovery of documents as known in common law countries.

The United States delegation reported that "Article 23 permits a state to refuse to execute a letter, issued to obtain pretrial discovery of documents." [26] Under the better reasoned view, Art. 23 allows states to limit the scope of evidence taking for which they will employ their compulsory powers on behalf of foreign courts, but it does not give foreign authorities the significant prerogative of determining how much discovery may be taken from their nationals who are litigants before American courts. Under the view apparently taken in *Schroeder, Philadelphia Gear,* and *General Electric,* Art. 23 would give foreign authorities this power over the conduct of litigation in American courts. It would be unfathomable for an international treaty to make such power a matter for any state's optional, unilateral declaration. Furthermore, the imprecise and general wording of the permitted declaration is wholly inconsistent with the tremendous importance it would carry under the interpretation urged by Anschuetz. While it is conceivable that the United States could enter into a treaty giving other signatories control over litigation instituted and pursued in American courts, a treaty intended to bring about such a curtailment of the rights given to all litigants by the federal rules would surely state its intention clearly and precisely identify crucial terms.

(d)

A further reason this court is unpersuaded by the cases cited by Anschuetz is that

---

**26.** Report of the United States Delegation to the Eleventh Session of Hague Conference on Private International Law, 8 International Legal Materials 785, 804, 808–09 (1969).

they clearly suggest that foreign officials' rulings, in executing letters of request, are subject to being overridden by the issuing American court. In other words, if West German authorities did not sufficiently temper their Art. 23 declaration by recognizing a duty of good faith, then the course contemplated in these decisions is for the American court to order the requested discovery anyway under the Federal Rules of Civil Procedure. In our view, the greatest insult to a civil law country's sovereignty would be for American courts to invoke the foreign country's judicial aid merely as a first resort, subject to the eventual override of their rulings under the Federal Rules of Civil Procedure.[27] We do not believe the Convention's language dealing with judicial cooperation should be elevated to the status of the exclusive method of conducting discovery abroad. Such a result is neither good statutory interpretation, nor demanded by principles of international comity.[28] As the court emphasized in *Laker Airways, Ltd. v. Pan American World Airways*, 103 F.R.D. 42, 48 (D.D.C. 1984):

> The provisions under the Hague Convention and the actions of the German authorities pursuant thereto, are in patent

27. Similarly, the court in *Schroeder* reserves the right to impose sanctions if dissatisfied with the foreign national's compliance with the letter of request. Depending on the circumstances, this might involve an even more offensive second guessing of the foreign authority's execution of the letter of request.

28. We find further support in the reasoning expressed by the court in *Compagnie Francaise d'Assurance v. Phillips Petroleum Company*, [81 Civ. 4463–CLB, slip op. at 10–12 (January 25, 1983) S.D.N.Y.]:

A finding that the production of documents is precluded by foreign law does not conclude a discovery dispute. A United States court has the power to order any party within its jurisdiction to testify or produce documents regardless of a foreign sovereign's views to the contrary. *Societe Internationale Pour Participations Industrielles v. Rogers*, 357 U.S. 197, 204–06, 78 S.Ct. 1087, 1091–92, 2 L.Ed.2d 1255 (1958); *United States v. First National City Bank*, 396 F.2d 897, 900–01 (2d Cir.1968); *United States v. Vetco*, 644 F.2d 1324, 1329 (9th Cir.), *cert. denied* [70 L.Ed.2d 639] 102 S.Ct. 671 [454 U.S. 1098] (1981). Plaintiffs have urged this court to defer to the French statute and to decline to order the requested discovery.

In fact, it is suggested that we are *required* to do so, because Articles 11 and 21 of the Hague Convention on the Taking of Evidence Abroad would permit a party confronted with a statute such as Article 1 to refuse to give evidence. Because the United States is a signatory to the Convention, the argument continues, this court is bound by its provisions and must also permit plaintiff to refuse to produce the documents. In essence, plaintiffs argue that the articles of the Hague Convention withdraw from this court the right to employ the discovery devices provided in the Federal Rules of Civil Procedure because they conflict with the provisions of French Law No. 80–538.

The Hague Convention, signed by both France and the United States, is an international treaty and as such is entitled to be recognized as part of the supreme law of the land. United States Constitution, Art. 6, Cl. 2. The Federal Rules of Civil Procedure, duly enacted by Congress, are also part of the supreme law of the land. Absent a direct conflict, our duty is to enforce them both. Nothing in the legislative history of the Hague Convention nor in the congressional proceedings at the time of its adoption, suggest that Congress intended to replace, restrict, modify or repeal the federal rules. Indeed, Phillip Amram, a member of the United States delegation to the 1968 session of the Convention, described its provisions as "a climax [of] more than a generation of effort ... by those interested in modernizing and improving international judicial assistance," and stated it would affect "no major changes in United States procedure [nor require any] changes in U.S. legislation or rules." Amram, United States ratification of the Hague Convention on the taking of evidence abroad, 67 American Journal of International Law 104, 105 (1973).

Treaties should be construed so as to affect their purposes, *Reed v. Weiser* [*Wiser*], 555 F.2d 1079 (2d Cir.), *cert. denied*, 434 U.S. 922 98 S.Ct. 399, 54 L.Ed.2d 279 (1977), and to be as consistent, insofar as possible, with co-existing statutes, *Washington v. Fishing Vessel Association*, 443 U.S. 658, 690, 99 S.Ct. 3055, 3076, 61 L.Ed.2d 823 (1979). The goal of the Hague Convention was to facilitate and increase the exchange of information between nations. It would not serve this goal to transform its provisions into a means to frustrate the discovery process. We conclude, therefore, that this court is not required to defer to the French statute by virtue of the Hague Convention.

conflict with the Federal Rules of Civil Procedure and the rights which these rules grant to all litigants, including this plaintiff. The Federal Rules give to every litigant in a United States court very wide discovery rights. Thus, Rule 26 provides broad rights with respect to the taking of depositions; Rule 33 provides that interrogatories "shall be answered" by the party upon which they are served; and Rule 34 contemplates the broadest possible discovery and production of documents. Nowhere in these rules is there the slightest suggestion that a party properly before the court may not avail itself of these discovery rights against another party within the jurisdiction of the court merely because the documents sought or the persons to be deposed are not located in the United States. Indeed, the rules clearly contemplate their applicability abroad if the United States Court has jurisdiction.

### III.

Of course, to say what is proper and permitted as an exercise of power by an American court acting under the federal rules is not necessarily to say that such a power should always be employed. Particularly in the realm of international discovery we believe the exercise of judicial power should be tempered by a healthy respect for the principles of comity.

Though many of the reported decisions require resort to the Hague Convention as a matter of comity, none holds that the Convention is exclusive and therefore supersedes traditional discovery methods. We believe this is for good reason. Such a holding would be exceptionally adverse to United States' interests. It would allow foreign signatory states to determine the extent of extraterritorial discovery to be permitted by American courts. It does not require a Prometheus to foresee that United States litigants would soon find it impossible to obtain necessary discovery from foreign based parties.

The question remains whether, as a matter of comity, a United States court should order parties to proceed under the Convention before resorting to more traditional means of discovery. While there is no blocking statute [29] involved in the case before us, in its brief submitted at our invitation, the German government has expressed its opinion that "[c]ompliance in Germany with the order of the U.S. District Court mandating ... the production of documents located in Kiel, Germany, would be a violation of German sovereignty unless the order is transmitted and executed by the method of Letter of Request under the Convention."

 Of course, it is for us to determine the extent of American treaty obligations. This question is one of federal law to be determined by the intent of the parties to the treaty. The evidence of that intent is found in the language of the treaty itself. *See Sumitomo Shoji America,*

29. A blocking statute is a law passed by the foreign government imposing a penalty upon a national for complying with a foreign court's discovery request. France and Britain have passed blocking laws aimed at discovery in American antitrust suits. These statutes are also known by the descriptive moniker: clawback provisions.

It is not *ipso facto* a defense to a discovery request that the law of a foreign country may prohibit production or disclosure. As the Eleventh Circuit held in *United States v. Bank of Nova Scotia,* 691 F.2d 1384 (11th Cir.1982), cert. denied, —— U.S. ——, 103 S.Ct. 3086, 77 L.Ed.2d 1348 (1983), even at the sanction stage, violation of foreign law is not necessarily a valid defense to a lawfully issued subpoena for documents. *See also, Arthur Andersen & Co. v. Finesilver,* 546 F.2d 338, 342 (10th Cir.1976); cert. denied 429

U.S. 1096, 97 S.Ct. 1113, 51 L.Ed.2d 543 (1977). Restatement (Second) Foreign Relations Law of the United States § 39. A fortiori it is not a defense at this discovery juncture.

If the foreign law has in fact prevented the litigant from providing the information despite a United States court order, the good faith of the discovered party is relevant to the sanctions that may be imposed for noncompliance with the court order, *see e.g., Societe Internationale v. Rogers,* 357 U.S. at 205–06, 209–13, 1092–93, 1094–96. *In re Westinghouse Elect. Corp. Uranium Contracts Litigation,* 563 F.2d at 996–97, but this does not detract from the authority of the court to order such discovery to take place. *International Society for Krishna Consciousness v. Lee* [No. 75 Civ. 5388 (Sept. 11, 1984 S.D. N.Y.) ].

*Inc. v. Avagliano,* 457 U.S. 176, 180, 102 S.Ct. 2374, 2377, 72 L.Ed.2d 765 (1982).

Unlike the Hague Service Convention, which expressly provides that it is exclusive,[30] the Hague Evidence Convention contains no express provision for exclusivity. In addition, extraterritorial discovery has been a standard practice of American courts for some time, and there is no evidence that the American negotiators, the Department of State, or the Congress intended to prohibit the practice.[31] In fact, the Senate Report emphasized that the Convention was intended to improve, not thwart, the means for securing evidence abroad.[32]

> [The Convention] makes no major changes in United States procedure and requires no major changes in United States legislation or rules. On the other front, it will give the United States courts and litigants abroad enomorous aid by providing an international agreement for the taking of testimony, the absence of which has created barriers to our courts and litigants.[33]

■ We hold that the Hague Convention is to be employed with the involuntary deposition of a party conducted in a foreign country, and with the production of documents or other evidence gathered from persons or entities in the foreign country who are not subject to the court's *in personam* jurisdiction. The Hague Convention has no application at all to the production of evidence in this country by a party subject to the jurisdiction of a district court pursuant to the Federal Rules. So long as discovery is sought for the identity and qualifications of witnesses there is no basis to suggest that supplying this information amounts to obtaining evidence in Germany. If the dis-

covery sought by Gijonesa of Anschuetz in Germany becomes particularly intrusive or is contemplated for persons not subject to the court's jurisdiction, then the court may order the parties to conduct that discovery under the Hague Convention.

■ It is our opinion that the district court retains the power to order a litigant from whom discovery is sought, and who is subject to *in personam* jurisdiction, to produce the evidence upon pain of sanctions. The question is whether the district court should always exercise its power to the full extent permitted by the federal rules.

■ Since we stayed all discovery orders pending our consideration of the possible conflict between the Hague Convention and the Federal Rules, and as a result new discovery orders must now be promulgated, we believe the district court in fashioning its discovery procedure should reconsider all orders in the light of the principles expressed in this opinion. The district court should remember that Anschuetz may make available any documents and witnesses in Germany if this is more convenient to the parties without implicating German sovereignty. If Anschuetz is not voluntarily forthcoming in Germany, the court can order the production of documents and the examination of witnesses to occur in the United States to avoid any infringement upon German sovereignty. The full range of sanctions available in the federal rules remain applicable to any party subject to the court's *in personam* jurisdiction.

As we are confident that the district court will willingly follow the principles expressed in this opinion, there is no need for the issuance of a mandamus order or a determination of whether the court abused

---

**30.** Art. 1 of the Service Convention (20 U.S.T. at 362) provides: "The present Convention shall apply in all cases in civil or commercial matters where there is occasion to transmit a judicial or extrajudicial document for service abroad.

**31.** Oxman, The Choice between Direct Discovery and Other Means of Obtaining Evidence Abroad: The Impact of the Hague Evidence Convention, 37 U. Miami L.Rev. 733, 760 (1983).

**32.** Amram, Explanatory Report on the Convention on the Taking of Evidence Abroad in Civil or Commercial Matters, reprinted in message from the President transmitting the Convention on the Taking of Evidence Abroad in Civil or Commercial Matters, S. Exec. A., 92d Cong. 2d Sess. 1, 3 (1972).

**33.** *Id.* at 5.

its discretion in the orders previously issued.

MANDAMUS DENIED.