**LAKER AIRWAYS LIMITED, Plaintiff,**

v.

**PAN AMERICAN WORLD AIRWAYS,
et al., Defendants.**

**LAKER AIRWAYS LIMITED, Plaintiff,**

v.

**SABENA, BELGIAN WORLD
AIRWAYS, et al.,
Defendants.**

**LAKER AIRWAYS LIMITED, Plaintiff,**

v.

**UNION DE TRANSPORTS AERIENS,
et al., Defendants.**

**Civ. A. Nos. 83–3362, 83–0416
and 83–2791.**

United States District Court,
District of Columbia.

June 26, 1984.

Robert M. Beckman, Beckman & Farmer, Carl W. Schwarz, Metzger, Shadyac & Schwarz, Washington, D.C., for plaintiff.

Fred D. Turnage, Cleary, Gottlieb, Steen & Hamilton, Washington, D.C., for Pan American World Airways.

Leonard N. Bebchick, Douglas E. Rosenthal, Sutherland, Asbill & Brennan, Washington, D.C., for British Caledonian Airways.

James J. Murphy, Bryan, Cave, McPheeters & McRoberts, Washington, D.C., for McDonnell Douglas Corp., McDonnell Douglas Finance Corp.

George T. Manning, Chadbourne, Parke, Whiteside & Wolff, Washington, D.C., for Trans World Airlines.

Lloyd Cutler, Wilmer, Cutler & Pickering, Laurence A. Short, Short, Klein & Karas, Washington, D.C., for Lufthansa German Airlines Swissair, Swiss Air Transport Company Limited.

Sidney S. Rosdeitcher, Paul, Weiss, Rifkind, Wharton & Garrison, Washington, D.C., for British Airways Bd.

Bert Rein, P.C., Washington, D.C., for Inter. Air Transport Ass'n.

Peter J. Nickels, Covington & Burling, Washington, D.C., for Societe Anonyme Belge D'Exploitation de la Navigation Aerienne (Sabena).

Robert V. von Mehren, R.C. Ferrara, Debevoise & Plimpton, Thomas Whalen, Condon & Forsyth, Washington, D.C., for KLM Royal Dutch Airlines.

Sanford C. Miller, New York City, Haight, Gardner, Poor & Havens, Washington, D.C., for Union de Transports Aeriens.

Robert R. Gray, Hale, Russell & Gray, Washington, D.C., for Scandinavian Airlines System.

Stephen J. Pollak, Shea & Gardner, Washington, D.C., amicus curiae.

## OPINION

HAROLD H. GREENE, District Judge.

Presently pending before the Court are a motion by plaintiff to compel discovery against defendant Lufthansa [1] and a motion by Lufthansa for a protective order concerning the depositions of its vice chairman and its former chairman. The issues with respect to both motions revolve principally around four arguments made by Lufthansa: (1) that it should not be required to produce any documents prior to a resolution of this Court's jurisdiction and the issue of what, if any, aspects of the complaint state a claim upon which relief may be granted; (2) that the discovery requests improperly demand the production of information which Lufthansa is precluded under its operating license from producing without the approval of the German government; (3) that plaintiff's discovery requests conflict with the *Convention on Taking Evidence Abroad in Civil or Commercial Matters*, 23 U.S.T. 2444, T.I.A.S. No. 7444, 28 U.S.C. § 1781 (hereinafter referred to as the Hague Convention); and (4) that the principles of comity among nations require that the Court defer to the German authorities with respect to the Hague Convention procedures and the breadth of the document requests. [2]

### I

Before discussing the technical aspects of these issues, it is appropriate to delineate the background which underlies plaintiff's requests and Lufthansa's response.

On November 24, 1983, Laker filed its motion to compel. According to the motion, interrogatories and requests for the production of documents were served on the Lufthansa one year earlier—in November and December 1982. An extension of the normal response period was agreed to by Laker on the basis of representations that defendant would substantially provide discovery. Instead of doing so, Lufthansa initially objected to *all* discovery.

Subsequently, more than two years after the requests had been made, out of hundreds, perhaps thousands, of documents requested, defendant made available a handful of documents for inspection, and none for both inspection and copying. [3] Not a single answer has been given to any of Laker's interrogatories.

Plaintiff repeatedly sought to negotiate and, here again, it was initially rebuffed entirely. After this Court denied a stay of discovery, Lufthansa agreed to make documents available, but it restricted that offer to those documents which, in its unilateral judgment, it regarded as being in reasonable compliance. And even this offer was limited to documents located in the United States. [4]

In light of this record, it is astonishing to read Lufthansa's assertion that it "has responded to all of Laker's requests that could conceivably be deemed relevant and necessary at the present time for the prep-

---

**1.** The motion initially also concerned Swissair, but it has since been withdrawn with respect to that defendant.

**2.** Lufthansa also complains that plaintiff's requests are overly broad and burdensome and that they seek irrelevant information. These boilerplate objections entirely lack merit. See generally, *Hickman v. Taylor,* 329 U.S. 495, 507, 67 S.Ct. 385, 391, 91 L.Ed. 451 (1947); *Oppenheimer Fund, Inc. v. Sanders,* 437 U.S. 340, 351, 98 S.Ct. 2380, 2389, 57 L.Ed.2d 253 (1978); 4A Moore's *Federal Practice* ¶ 33.27, pp. 33–164 *et seq.* There is likewise no merit to specific objections made regarding the depositions of Reinhardt Abraham, Lufthansa's vice chairman, and Herbert Culman, its former chairman.

**3.** Among the documents produced were such meaningless papers as speeches by Sir Freddie Laker, newpaper clippings, and organizational charts. Many of the documents defendant refused to produce have been made freely available by this defendant in its parallel suit in Great Britain.

**4.** Other defendants have been far more forthcoming. For example, the French Union de Transports Aeriens has worked out with plaintiff an apparently reasonable plan for the production of documents, and a similar effort is under way between plaintiff and the Skandinavian Airlines System.

aration of the case." [5] Even in the heat of the adversary process, and in George Orwell's year of 1984, the Court expects counsel in papers filed with the Court to give to words their ordinary meaning.

It should also be noted that when, after extensive delay, Lufthansa ultimately applied to the German government for permission to comply with discovery requests made in this Court (see p. 51 *infra*), it did so in language calculated to secure rejection rather than approval. Thus, in its application ostensibly designed to secure consent, Lufthansa pointed out to the German Ministry of Transport that the Ministry had already refused a prior application; that Lufthansa had many objections to the production of documents; and that Laker's motion to compel had requested the inspection and copying of documents which "have only the most limited relevance to its complaint." Lufthansa then went on to advise the German Ministry that it was nevertheless "obliged to make a 'bona fide' effort to obtain your consent."[6] Needless to say, as discussed below, the German Ministry's response was negative.

## II

Lufthansa asserts that plaintiff is acting prematurely because subject matter jurisdiction is likely to be lacking and the complaint may fail to state claims upon which relief may be granted. It follows, says this defendant, that plaintiff should be required to address itself to those issues before conducting discovery into substantive matters.[7]

■ The complete answer to these contentions is that neither jurisdiction nor the legal sufficiency of the claims are issues in this lawsuit. Lufthansa has deliberately chosen not to contest either issue here, preferring to litigate them instead by the circuitous route of a lawsuit in the courts of Great Britain. The German corporation cannot have it both ways. It cannot, at one and the same time, fail to acknowledge the obvious—that this Court is the appropriate tribunal for disposing of jurisdictional and substantive issues in a lawsuit pending here—while also requesting the Court to deny or to narrow plaintiff's discovery requests on the ground that jurisdiction may be lacking or the complaint may fail to state claims upon which relief may be granted.

## III

Lufthansa contends next that it is forbidden by its German operating license from producing documents and information from its offices in Germany without the prior approval of the German Ministry of Transport. There are several problems with that argument.

■ First. The German airline has not even attempted to comply with Laker's request by seeking clearance from the German authorities.[8] Lufthansa's response—that is has no obligation to do so because the request is overbroad—is consistent with that defendant's pattern of arrogant disregard of its obligations under law and procedure. If Lufthansa, or any other party to a lawsuit pending in a court, considers a discovery request to be too broad, or otherwise improper, its appropriate course is to oppose such request in that court, whether by objections, a motion for a protective order, or whatever other procedural means are made available by the appropriate rules of procedure. However, it cannot simply sit back, without even making an effort to secure whatever foreign permission may be required, on the basis of its unilateral judgment that the request is improper.

■ Second. Lufthansa argues next that the German Ministry is not likely to grant permission to its request. That argument, can, of course, only be tested by a

---

5. Memorandum of February 15, 1984 at 35.

6. Letter from Lufthansa to the German Minister of Transport dated December 6, 1983.

7. Memorandum of March 23, 1984 at 13–15.

8. Lufthansa Memorandum dated February 15, 1984, at 34–35.

Lufthansa request, and, as indicated, no such request has been made. Moreover, the German airline is owned by the German government.[9] Thus, the Lufthansa argument is really a claim that it should not have to comply with discovery because its owner—the German government—has decided, or will decide, in its discretion, not to comply with such discovery. Such a claim of de facto immunity is fallacious, and is rejected.

■■■ Third. It is not *ipso facto* a defense to a discovery request that the law of a foreign country may prohibit production or disclosure. As the Eleventh Circuit held in *United States v. Bank of Nova Scotia*, 691 F.2d 1384 (11th Cir.1982), even at the sanction stage (see note 12 *infra*), violation of foreign law is not necessarily a valid defense to a lawfully issued subpoena for documents. See also, *Arthur Andersen & Co. v. Finesilver*, 546 F.2d 338, 342 (10th Cir.1976); Restatement (Second) Foreign Relations Law of the United States § 39. *A fortiori* it is not a defense at this juncture.

This is so particularly in the type of case that is here before the Court. In *In re Uranium Antitrust Litigation*, 480 F.Supp. 1138 (N.D.Ill.1979), the court noted that in exercising its power to require production notwithstanding foreign law, a court may appropriately consider the importance of the policies underlying the particular United States statute. Said the court:

> Finally, we recognize that, as one commentator has put it, "the heart of any American antitrust case is the discovery of business documents. Without them, there is virtually no case." Note, *Discovery of Documents Located Abroad in U.S. Antitrust Litigation: Recent Developments in the Law Concerning the Foreign Illegality Excuse for Non-*

*Production*, 14 Va.J.Int'l.L. 747 (1974). That is especially true when plaintiffs allege an antitrust conspiracy which has taken deliberate and elaborate steps to cloak its activities. "If true, the nature of the activities must be ferreted out of dark and obscure corners." *Societe Internationale [v. McGranery] supra*, 111 F.Supp. [435] at 443 [ (1953) ]. The documents at issue here are crucial to plaintiff's proof.

480 F.Supp. at 1155.

Fourth. Lufthansa's United States operating permit specifies that,

> [b]y accepting this permit, [the airline] waives any right it may possess to assert any defense of sovereign immunity from suit in any action ... against the holder in any court ... based upon any claim arising out of operations by the holder of this permit.

These provisions would be meaningless if Lufthansa were able to avoid the discovery rules by reason of the terms of its German license.[10] Lufthansa operated here when the alleged antitrust violations were committed and it is allowed to continue to operate here solely because of the United States license and the commitments it made when the license was granted. These commitments are binding, and they will be enforced.

■■ Lufthansa shall forthwith make the applications to the German Ministry it claims are necessary under its German permit to comply with all of plaintiff's discovery requests. When the Court rules on the motion to compel (see Part V *infra*), it will not consider any defenses based on objections from that Ministry unless such application is made as required herein.[11] In the event that the German authorities do not grant permission as needed to satisfy the discovery rights of plaintiff in this action, the Court will consider their rulings in

---

**9.** Any judgment in favor of plaintiff would therefore be a financial obligation of the German government.

**10.** See *"El-Al" Israel Airlines Limited, Service to the Netherlands, Belguim, Luxemburg, and Turkey*, 14 C.A.B. 962, 964.

**11.** Should the requests subsequently be narrowed as a result of the procedures prescribed in Part V below, the application to the German authorities may, of course, be at that time narrowed accordingly.

whatever proceedings, if any, that may be held pursuant to Rule 37 of the Federal Rules of Civil Procedure.[12]

## IV

Lufthansa contends next that the Hague Convention is the exclusive means for compelling it to produce documents and for securing the deposition of its two officers.

The principal methods provided for discovery purposes under the Convention are letters of judicial request,[13] the taking of testimony by consular officials, and the taking of testimony by commissioners. On their face, these provisions do not appear to be ineffective. However, the government of the Federal Republic of Germany has rendered them entirely ineffective, at least in the context of the present proceeding.

That government has made a declaration under Article 23 of the Convention that it will not execute letters of request issued for the purpose of obtaining discovery documents. That government has also made a declaration under Article 33 of the Convention that it will not allow its nationals to give testimony before the consular officials of the forum state or before commissioners appointed either by the requesting or the executing court, and that it will lend no judicial assistance in such a consular or commissioner proceeding. That government has finally made it clear, through a series of notes verbale, that in case of a request by the United States for the questioning of a witness by United States consular officials in Germany it would neither compel such a person to appear nor, should

he appear voluntarily, to compel him to provide any information.[14]

In short, the German government will not allow the production in Germany of documents; it will permit no evidence to be taken under compulsion before a consular officer or a commissioner; and it reserves the right to refuse a judicial letter of request if, in its sole discretion, a response would be contrary to the sovereignty or security interests of the Federal Republic.[15]

The provisions under the Hague Convention and the actions of the German authorities pursuant thereto, are in patent conflict with the Federal Rules of Civil Procedure and the rights which these Rules grant to all litigants, including this plaintiff. The Federal Rules give to every litigant in a United States court very wide discovery rights. Thus, Rule 26 provides broad rights with respect to the taking of depositions; Rule 33 provides that interrogatories "shall be answered" by the party upon which they are served; and Rule 34 contemplates the broadest possible discovery and production of documents. Nowhere in these Rules is there the slightest suggestion that a party properly before the Court may not avail itself of these discovery rights against another party within the jurisdiction of the Court merely because the documents sought or the persons to be deposed are not located in the United States. Indeed, the Rules clearly contemplate their applicability abroad if the United States Court has jurisdiction. See, *e.g.*, Rule 28(b), Fed.R.Civ.P.

The fundamental conflict between the Federal Rules and the Hague Convention as it would be applied in Ger-

---

**12.** At that time, the Court would appropriately take into account such matters as the various legitimate national interests, the efforts the parties had made to secure relief from the orders of other governments and courts, and their relationship with those governments. See *Societe Internationale v. Rogers,* 357 U.S. 197, 78 S.Ct. 1087, 2 L.Ed.2d 1255 (1958); *Arthur Andersen & Co. v. Finesilver, supra; United States v. Vetco,* 691 F.2d 1281 (9th Cir.1981).

**13.** Depending upon the procedures of the executing state, such a letter of request may permit

the taking of witness depositions, interrogatories, production of documents, and the like.

**14.** See T.I.A.S. 9938, Agreements Between the United States and Germany of February 11, 1955, January 13 and October 8, 1956, October 17, 1979, and February 1, 1980.

**15.** Given Germany's ownership of Lufthansa, it is probable that this avenue would be utilized should the remaining reservations under the Convention be insufficiently effective.

many raises the obvious question whether the Federal Rules must be deemed superseded or repealed *pro tanto* by the Convention. The Court agrees entirely with Judge Brieant of the Southern District of New York who in *Compagnie Francaise d'Assurance v. Phillips Petroleum Co.*, 81 Civ. 4463–CLB, slip op. at 10–12 (S.D.N.Y. Jan. 25, 1983), wrote as follows:

A finding that the production of documents is precluded by foreign law does not conclude a discovery dispute. A United States court has the power to order any party within its jurisdiction to testify or produce documents regardless of a foreign sovereign's use to the contrary. *Societe International v. Rogers*, 357 U.S. 197, 204–06 [78 S.Ct. 1087, 1091–92, 2 L.Ed.2d 1255] (1958); *United States v. First National City Bank*, 396 F.2d 897, 900–01 (2d Cir.1968); *United States v. Vetco*, 644 F.2d 1324, 1329 (9th Cir.), *cert. denied* [454 U.S. 1098] 102 S.Ct. 671 [70 L.Ed.2d 639] (1981). Plaintiffs have urged this Court to defer to the French statute and to decline to order the requested discovery.

In fact, it is suggested that we are *required* to do so, because Article 11 and 21 of the Hague Convention on the Taking of Evidence Abroad would permit a party confronted with a statute such as Article 1 to refuse to give evidence. Because the United States is a signatory to the Convention, the argument continues, this Court is bound by its provision and must also permit plaintiffs to refuse to produce the documents. In essence, plaintiffs argue that the Articles of the Hague Convention withdraw from this Court the right to employ the discovery devices provided in the Federal Rules of Civil Procedure because they conflict with the provisions of the French Law No. 80–538.

The Hague Convention, signed by both France and the United States, is an international treaty and as such is entitled to be recognized as part of the supreme law of the land. United States Constitution, Art. VI, cl. 2. The Federal Rules of Civil Procedure, duly enacted by Congress, are also part of the supreme law of the land. Absent a direct conflict, our duty is to enforce them both. Nothing in the legislative history of the Hague Convention nor in the Congressional proceedings at the time of its adoption, suggests that Congress intended to replace, restrict, modify or repeal the Federal Rules. Indeed, Philip Amram, a member of the United States delegation to the 1968 session of the Convention, described its provisions as 'a climax [of] more than a generation of effort ... by those interested in modernizing and improving international judicial assistance,' and stated it would effect 'no major changes in U.S. procedure [nor require any] changes in U.S. legislation or rules.' Amram, *United States Ratification of the Hague Convention on the Taking of Evidence Abroad*, 67 Am.J.Int'l.L. 104, 105 (1973).

Treaties should be construed so as to effect their purposes, *Reed v. Wiser*, 555 F.2d 1079 (2d Cir.), *cert. denied*, 434 U.S. 922 [98 S.Ct. 399, 54 L.Ed.2d 279] (1977), and to be as consistent, insofar as possible, with coexisting statutes, *Washington v. Fishing Vessel Assn.*, 443 U.S. 658, 690 [99 S.Ct. 3055, 3076, 61 L.Ed.2d 823] (1979). The goal of the Hague Convention was to facilitate and increase the exchange of information between nations. It would not serve this goal to transform its provisions into a means to frustrate the discovery process. We conclude, therefore, that this Court is not required to defer to the French statute by virtue of the Hague Convention.

See also, *Murphy v. Reifenhauser KG Maschinenfabrik*, 101 F.R.D. 360 (D.Vt. 1984); *Graco, Inc. v. Kremlin, Inc.*, 101 F.R.D. 503 (N.D.Ill.1984); *Lasky v. Continental Products Corp.*, 569 F.Supp. 1227 (E.D.Pa.1983); Oxman, "The Choice Between Direct Discovery and Other Means of Obtaining Evidence Abroad: The Impact of the Hague Evidence Convention," 37 U.Miami L.Rev. 733 (1983).

As the *Uranium Antitrust Litigation* court recognized, in an antitrust case

such as this, involving as it does an alleged conspiracy among a number of foreign and domestic corporations, the absence of necessary foreign discovery would sound the death knell of a plaintiff's case.[16] The Court does not doubt that Congress did not intend to deprive litigants of their right to a fair trial in the courts of the United States in accordance with the Federal Rules of Civil Procedure when it ratified the Hague Convention, and the Court refuses to ascribe to the Congress so irrational a purpose.

Defendants rely to the contrary upon the position taken by the Solicitor General in the United States Supreme Court in No. 82–1888, *Volkswagen Aktiengesellschaft v. Falzon,* and upon several state court decisions.[17] In *Falzon,* a products liability case, the Michigan courts entered orders directing that depositions be taken of German nationals in Germany, and a question arose as to a possible conflict between these orders and the Hague Convention. The Supreme Court requested the views of the Solicitor General, and that official replied that in his opinion the orders conflicted with the obligations of the United States under the Convention and were therefore invalid under the Supremacy Clause. While the views of the Solicitor General on an issue such as this may well be entitled to weight,[18] the opinions he expressed in *Falzon* are not persuasive, if only because the operative facts there were entirely dissimilar from those which govern here.

 In the first place, the orders in *Falzon* were those of state courts, operating under state laws and procedures, and the Solicitor General therefore relied upon the Supremacy Clause as requiring adherence to a treaty negotiated by the United States rather than to state law. But the issue here is which federal law should be applied—the Hague Convention or the Federal Rules of Civil Procedure—and on that question the Supremacy Clause is of no help whatever.[19]

Moreover, the Michigan suit was a tort action. In that kind of litigation, the foreign authorities may be deemed to have interests similar to those of the United States, and it may therefore be assumed that they will cooperate to the end that results similar to those contemplated by the Federal Rules will be achieved. This case presents an entirely different situation. The subject matter of this lawsuit are the American anti-trust laws. This implicates both United States public policy interests of a special significance[20] and well-established foreign antagonisms to those laws.[21] Those antagonisms are heightened here because, as noted, Lufthansa is owned by the German government. The incentive of that government to refuse to cooperate is thus substantially increased.

By contrast, it was clear in *Falzon* that the German authorities were prepared to assist with the production of the necessary evidence; the only issue was by what means that evidence was to be obtained. In a reply note the German Ministry of Foreign Affairs agreed that no objection would be raised to the questioning of German or other non-American nationals by United States consular officers in Germany, even in the homes and offices of the

---

16. See also, *SEC v. Banca Della Svizzera Italiana,* 92 F.R.D. 111, 113 (S.D.N.Y.1981).

17. *E.g., Cuisinarts, Inc. v. Robot Coupe, S.A.* (Conn.Super.Ct.1982).

18. See *Kolovrat v. Oregon,* 366 U.S. 187, 198, 81 S.Ct. 922, 928, 6 L.Ed.2d 218 (1961).

19. It is settled law that, in the face of an apparent conflict, treaties do not invalidate federal statutes dealing with the same subject matter. See *Zenith Radio Corp. v. Matsushita Electric Industrial Co.,* 494 F.Supp. 1263 (E.D.Pa.1980). The Federal Rules of Civil Procedure have the full force and effect of a statute. 28 U.S.C. § 2072; *United States ex rel. Tanos v. St. Paul Mercury Insurance Co.,* 361 F.2d 838 (5th Cir. 1966).

20. See *Industrial Investment Development Corp. v. Mitsui Co.,* 671 F.2d 876 (5th Cir.1982); *Laker Airways Ltd. v. Pan American World Airways,* 559 F.Supp. 1124, 1134 (D.D.C.1983).

21. See *Laker Airways v. Sabena,* 731 F.2d 909 at 939–40 (D.C.Cir.1984).

witnesses, provided only that no compulsion was used. Here, by contrast, presumably for the reasons cited above, the German authorities have shown no inclination to facilitate discovery by Laker.[22]

■ The Court holds that in this case the Hague Convention does not constitute the exclusive means by which plaintiff may secure discovery from Lufthansa, whether in the United States, in the Federal Republic of Germany, or elsewhere.

## V

It has been held by some courts that even though the Hague Convention may not be the exclusive means for compelling discovery abroad, it is appropriate for a United States tribunal to require a litigant to attempt to secure discovery by means of the procedures provided for by the Convention before resort is had to the Federal Rules. See, *e.g., Schroeder v. Lufthansa German Airlines,* No. 83 C 1928 (N.D.Ill. 1983); see also, Restatement (Second) Foreign Relations Law of the United States § 40.

Notwithstanding Lufthansa's appalling record with regard to discovery (see Part I *supra*) and the close financial relationship between it and the German government, the Court will not foreclose the possibility that a reasonable accommodation between the interests of justice in this Court and the interests of the German authorities can yet be achieved. The Court has previously been sensitive to the requirements of comity,[23] and it will continue to do so.

The German Ministry of Transport stated in its response to the Lufthansa application that permission for the production of the materials requested by Laker would be deferred until the decision of the United States Supreme Court in the *Falzon* case referred to above.[24] The Supreme Court dismissed the appeal in that case on February 21, 1984, and the German Ministry's basis for deferral is thus gone.

■ This Court, in the exercise of its discretion, and in accordance with the principles of comity, will defer entry of an order on plaintiff's motion to compel for an additional thirty days from the date of the issuance of this Memorandum,[25] and it will also delay the deposition of Abraham and Culman for the same period. This delay should give the German authorities both the time and the opportunity to decide whether they wish to provide cooperation within the spirit both of the Hague Convention and of comity between nations. It will also allow the parties to attempt to come to an agreement regarding reasonable parameters of the discovery in Germany, both documentary and by way of deposition.[26]

---

**22.** The various state court decisions cited by Lufthansa suffer from the same problems as the Solicitor General's brief, and they are for that reason no more persuasive.

**23.** *Laker Airways Ltd. v. Pan American World Airways,* 577 F.Supp. 348, 354–55 (D.D.C.1983); *Laker Airways Ltd. v. Pan American World Airways, supra,* 559 F.Supp. at 1138–39.

**24.** The relationship between the *Falzon* case in the Supreme Court and the decision of the German Minister under the Hague Convention and under German law is mystifying.

**25.** This will provide the German authorities some 20 weeks from the Supreme Court's action in *Falzon.*

**26.** Each side has asked for the assessment of costs against the other. The request of Lufthansa is denied as frivolous. The Court will defer plaintiff's request for costs and attorney's fees pending defendant's record of compliance with the Federal Rules and the orders of the Court following the present ruling, as well as the reasonableness with which it negotiates hereafter with plaintiff regarding discovery. Should the entry of an order to compel become necessary, the Court will at that time further consider the issue of costs in light of Rule 37, Fed.R.Civ.P.