**William J. WORK, and Rohm and Haas Company, Plaintiffs,**

v.

**Peter BIER, Rudolf Binsack, and Bayer Aktiengesellschaft, Defendants.**

**Civ. A. No. 84–3500.**

United States District Court,
District of Columbia.

May 2, 1985.

Michael B. Fein, Rohm and Haas Co., Philadelphia, Pa., and Dale H. Hoscheit, Banner, Birch, McKie & Beckett, Washington, D.C., for plaintiffs.

Frank E. Robbins, James R. Laramie, Robbins & Laramie, Washington, D.C., and David Boies, Stephen D. Poss, Cravath, Swaine & Moore, New York City, for defendants.

## MEMORANDUM OPINION

ARTHUR L. BURNETT, Sr., United States Magistrate.

The progress of discovery in this patent case has been stymied by several motions raising complex issues of international law and international relations in the context of determining the scope and applicability of the Hague Convention on the Taking of Evidence Abroad in Civil or Commercial Matters, done at the Hague on March 18, 1970, entered into force for the United States on October 7, 1972, 23 U.S.T. 2555, T.I.A.S. No. 7444, reprinted at 28 U.S.C.A. § 1781 note (West Supp.1985), referred to hereinafter as the Hague Evidence Convention, in connection with pretrial discovery of foreign nationals, a foreign corporation, Bayer Aktiengesellschaft, hereinafter Bayer AG,[1] and of two foreign national individuals, Peter Bier and Rudolf Binsack, before the court as party defendants in a suit, which challenges the determination of Board of Patent Inferences of the Patent and Trademark Office in determining priority of invention, under 35 U.S.C. § 146. The importance of the issue has resulted in several memoranda being filed by the parties on each side of the issue, and the entry into this case of the law firm of Cravath, Swaine & Moore of New York, general counsel for Bayer AG in the United States, with a comprehensive legal memorandum, on the basis that Bayer AG is one of the world's largest chemical companies with extensive commercial transactions, some of which involve commerce in the United States, and that a decision in this case could have significant impact on other litigation in which it is involved in the United States.[2]

The issue here was precipitated by a February 4, 1985 Notice of Depositions

---

1. Bayer AG is a corporation existing under the laws of the Federal Republic of Germany having its principal place of business at 5090 Levenskusen, Bayerwerk, West Germany.

2. Counsel for the defendants on February 25, 1985 requested an extension of time for the submission of further points and authorities in support of their motion to compel plaintiffs to comply with the Hague Evidence Convention, noting that such a memorandum would be prepared and submitted by the New York law firm of Cravath, Swaine & Moore, Bayer AG's general counsel in the United States, stating that the issue was of major importance to Bayer since it also is a party to other United States litigation. Counsel stated: "Partly because of the issues raised with respect to the Evidence Convention in the present litigation, and partly because of an awareness that the role of the Evidence Convention in connection with the discovery phase of other litigation in the United States was a matter of substantial importance to' it, Bayer decided to retain counsel for the specific purpose of investigating fully and briefing the proper interplay between the Federal Rules of Civil Procedure and the Evidence Convention."

upon oral examination of the defendants Peter Bier, Rudolf Binsack, and

> "Each attorney or agent responsible for the preparation and prosecution of German patent applications P–2653120 and P–2706128 filed November 23, 1976 and February 14, 1977, respectively, in the Federal Republic of Germany patent office."

The notice further provided as to the defendant Bayer AG that it was to produce for deposition—

> "The employee(s) of defendant Bayer AG most familiar with defendants' practice of the invention covered by said German patent applications and the corresponding U.S. patent 4,223,113."

These depositions were scheduled to take place at the Embassy of the United States in Bonn, West Germany beginning March 4, 1985 at 0900 and were to continue daily until completed. Further, the witnesses and defendants were "requested to bring with them to the depositions the originals or best copies of all of the documents and things called for by the Rule 34 request for production of documents served with the complaint in this action."

On February 13, 1985 the defendants filed a motion to quash plaintiffs' notice of depositions for oral examinations as being contrary to the Hague Evidence Convention, observing that in the Federal Republic of Germany, a civil law country, the taking of evidence is a judicial function rather than a private act of the parties and that when evidence is taken in West Germany, or attempted to be taken in West Germany without the participation or consent of the officials of West Germany, the judicial sovereignty of that Nation is considered to have been violated.[3] In support of their position the defendants relied on the amicus brief of the Solicitor General of the United States in *Volkswagenwerk Aktiengesellschaft v. Joseph Falzon, et al.,* decided at —— U.S. ——, 104 S.Ct. 1260, 79 L.Ed.2d 668 (1984) dismissing the appeal for want of prosecution.[4] The defendants specifically relied upon the view of the Solicitor General that, the Hague Evidence Convention must be interpreted to preclude an evidence taking proceeding in the territory of a foreign State which is a party to it, if the Convention did not authorize it and the host country did not otherwise permit it.[5]

The motion to quash was followed by a motion from the plaintiffs to compel discovery, filed February 15, 1985, to require the defendants to furnish proper answers to plaintiffs' first set of interrogatories, which also requested an award of expenses, including attorneys' fees. The defendants responded with a motion, filed on February 19, 1985, to direct the plaintiffs to conduct discovery in compliance with the Hague Evidence Convention, stating in its Memorandum of Points and Authorities:

> "Further study of the law relating to the Evidence Convention reveals that a more complete treatment of it is justified than appeared in defendants' Statement of Points and Authorities in support of their Motion to Quash the plaintiffs' Notice of Depositions, and further that *all* of the discovery of plaintiffs should be carried out in compliance with that treaty and not just oral depositions.

**3.** The defendants then represented that they would not object to the taking of evidence pursuant to a Letter of Request properly executed in accordance with the provisions of the Hague Evidence Convention.

**4.** The question presented in *Falzon* was whether orders of a Michigan trial court directing the depositions be taken of German nationals in the Federal Republic of Germany were contrary to the bilateral and multilateral agreements between the United States and the Federal Republic of Germany.

**5.** In footnote 3 of the amicus brief the Solicitor General observed: "The fact that a state court has personal jurisdiction over a private party … does not mean that treaty limits on proceedings for the taking of evidence abroad somehow do not apply to discovery orders addressed to such parties. The Evidence Convention protects the judicial sovereignty of the country in which evidence is taken, not the interests of the parties to the suit. Accordingly, its strictures apply regardless of the existence of personal jurisdiction."

This appears to be a case of first impression in this circuit in the intellectual property field. For that reason, and in view of the importance of the legal issues involved, this statement is submitted with respect to all of the discovery sought by plaintiffs." (Emphasis in the original.) P. 4.

Counsel for the defendants expressly stated that their motion and the accompanying Statement of Points and Authorities were to be construed as a statement of points and authorities also in opposition to plaintiffs' motion for an order compelling discovery, submitted on February 15, 1985.

Thereafter, counsel for the defendants requested an extension of time for the submission of further points an authorities to be presented in a comprehensive memorandum by Bayer AG's general counsel law firm in the United States, Cravath, Swaine & Moore. See fn. 2, *supra.* Counsel, in making this request, stressed that defendant Bayer, which is one the largest chemical companies in the world, has substantial commercial interests to protect and that some of these interests already have, and in the future would, undoubtedly involve Bayer in litigation in the United States. Counsel asserted:

"The question of the proper role of the Hague Convention is one of substantial importance not only to defendant Bayer herein but also to all federal courts and all practitioners before federal courts who are likely to encounter legal issues with respect to the Evidence Convention during discovery proceedings abroad, not only in Germany but in every other country that is a party to the Convention."

Following the receipt of the comprehensive memorandum from Cravath, Swaine & Moore and further opposition memoranda from the plaintiffs, the plaintiffs noticed the depositions of the defendants Peter Bier, Rudolf Binsack and Bayer AG for Washington, D.C., for April 8, 1985 at the Rohm and Haas Company Office.[6] The Magistrate on March 25, 1985 held an extensive hearing on this issue and on other then pending motions. Since then the Magistrate has again reviewed all of the pleadings and memoranda in the court record and has extensively reviewed the judicial precedent and law review commentary because of the complexity and the importance of the issue presented.

■ After an exhaustive study of the parties' several memoranda of points and authorities, relevant judicial precedent, the Solicitor General's amicus briefs on the issue, and relevant law review commentary, this Magistrate has reached the conclusion that the Hague Evidence Convention and the Federal Rules of Civil Procedure, as applicable to parties over which a federal court has *in personam* jurisdiction, may be both construed so as to avoid conflict and as compatible with each other. It appears clear beyond any doubt that the Hague Evidence Convention governs when discovery is sought of an individual or a corporate entity through its officers solely in the capacity of a witness and within the geographic boundaries of a foreign State which is a party to that Convention. Likewise, it seems clear that where depositions of party witnesses are sought to be taken within the geographic boundaries of a State which is a party to the Hague Evidence Convention, such discovery must be in accord with the procedures required by that Convention, in order to protect the territorial sovereignty of that Nation. Thus, the Hague Evidence Convention is not rendered inapplicable by a Federal district court having *in personam* jurisdiction over a German defendant, where the endeavor is to take the compulsory deposition of the German national within the geographic boundaries of the Federal Republic of Germany. In this connection it is signif-

---

6. That notice of deposition under Rule 30(b)(6) of the Federal Rules of Civil Procedure directed the defendant Bayer AG to designate one or more officers, directors or managing agents or other persons who would testify on its behalf to come to Washington, D.C. and to bring all documents and things in his or her possession which were called for by plaintiffs' Rule 34 requests, whether or not a claim of privilege was being made as to those documents or things.

icant to observe that the title of the Hague Evidence Convention refers to "taking of evidence abroad." *See General Electric Company, Medical Systems Division v. North Star International, Inc., et al.,* No. 83–C–0838 (N.D.Ill. Feb. 21, 1985), where the court observed:

"Our decision that any discovery requests propounded by General Electric to Lufthansa [a German Corporation] must comply with the terms of the Hague Convention, to the extent that it applies, does not end our inquiry. We must now resolve what appears to be a basic disagreement between those parties concerning the scope of the treaty. Specifically, General Electric contends that the Hague Convention applies only to discovery within West Germany, whereas Lufthansa suggests that it applies to all discovery in this case. We conclude that General Electric's view is correct." Slip op. at 5.

The Magistrate strongly concurs and construes the Hague Evidence Convention as protecting the territorial sovereignty of the foreign States which are parties to the Convention and as not extending its protections and procedures to foreign nationals, individuals or corporate entities through its officers, directors and managing agents wherever they may be located in the world.[7]

The Court in reaching its conclusion in *General Electric, supra,* relied upon *Renfield Corporation v. E. Remy Martin & Co., S.A.,* 98 F.R.D. 442, 444 (D.Del.1982), where the court concluded that "[t]he Hague Evidence Convention is not applicable to documents located in the United States", *Lasky v. Continental Products Corporation,* 569 F.Supp. 1227, 1228–29 (E.D.Pa. 1983), where the court found that the Hague Evidence Convention only applied to evidence located within a foreign country, and *Hodson v. A.H. Robins Co., Inc.,* 528 F.Supp. 809, 820 (E.D.Va.1981), *aff'd.* 715 F.2d 142 (4th Cir.1983), quoting the following from *Hodson:*

"[s]ome of the necessary evidence located in the United Kingdom can be obtained through the channels of international judicial assistance available under the Hague Convention. Of course, this system ... will not completely replicate the access to evidence which would exist if all relevant material were located in this country."

The court in *General Electric, supra,* also took note of the court's position in *Pierburg GmbH & Co. KG v. Superior Court of Los Angeles County,* 137 Cal. App.3d 238, 186 Cal.Rptr. 876, 881 (CA 2d Dist.1982), to the effect that the Hague Convention was not limited to discovery actually taken abroad and that the relevant consideration was not the location of the evidence, but the nationality of the party from whom the discovery was sought. This position was also adopted by the court in *Schroeder v. Lufthansa German Airlines,* 18 Av.Cas. (CCH) 17,223 (N.D.Ill., Sept. 15, 1983). The court in *General Electric* rejected this view, observing that:

"The whole point of requiring (as opposed to permitting) a litigant to seek discovery through the procedure established by the Hague Convention is to avoid infringing the judicial sovereignty of the foreign nation involved; that is the primary purpose of the treaty. *See, e.g. Report of the United States Delegation on the Evidence Convention,* 8 Int'l. Legal Materials 804, 806 (1969); *Cf. Federal Trade Commission v. Compagnie de Saint-Gobain-Pont-a-Mousson,* 636 F.2d 1300, 1325–26 & nn. 143–44 (D.C.Cir.1980). A nation's judicial sovereignty is only threatened, however, when discovery would take place within its borders." Slip op. at 7.

Referring to the history of the Convention, the court in *General Electric* further observed:

"Certainly, the Americans who participated in the drafting of the Hague Convention, and those involved in the ratification process, seem to have assumed that the treaty is only concerned with

---

7. See the Solicitor General's amicus brief in

*Falzon,* n. 3, quoted *supra* at n. 5 herein.

evidence actually taken abroad. *See* S.Exec.Rep. No. 25, 92d Cong., 2d Sess. (1972); Amram, *United States Ratification of the Hague Convention on the Taking of Evidence Abroad,* 67 Am. J.Int'l.L. at 105, *Report of the United States Delegation on the Evidence Convention,* 8 Int'l. Legal Materials at 806." Slip op. at 7–8.

What appears to be unsettled in the law is whether an American federal court, which has *in personam* jurisdiction over a foreign corporation or a foreign national individual can disregard the Hague Evidence Convention and require discovery under the normal procedures of the Federal Rules of Civil Procedure where the discovery is not to occur within the borders of a foreign Nation which is a party to the Convention. Can the American federal court require a foreign corporation, subject to its *in personam* jurisdiction, to produce under Rule 30(b)(6) one or more of its officers, directors or managing agents, to appear in the United States and more particularly in the forum jurisdiction, to give testimony upon oral examination at a deposition? Can the American federal court require a representative of a foreign corporation, subject to its *in personam* jurisdiction, to appear in the United States to answer interrogatories under oath and to submit them to local counsel for filing in the forum jurisdiction? Can the American federal court require a foreign corporation, subject to its *in personam* jurisdiction, with reference to documents and records located in a foreign country, to reproduce copies thereof, and ship them to local counsel in the forum jurisdiction for production pursuant to Rule 34 of the Federal Rules of Civil Procedure. This Magistrate concludes that an American federal court has such power which it can exercise, and that the exercise of such power does not conflict with the Hague Evidence Convention.

After an exhaustive study of the judicial precedent and law review commentary cited in this opinion, the Magistrate is firmly convinced that the treaty was not intended to create obstacles to that scope of discovery which was permissible under the American law before the Hague Evidence Convention became effective. There is nothing to suggest that the Convention was designed to create a wall between Nations where a foreign Nation could restrict the scope of discovery available under another Nation's laws applicable to foreign nationals conducting business within a Nation's geographic area and subject to the forum court's *in personam* jurisdiction. Such an approach to the Hague Evidence Convention would result in a "startling limitation on the sovereign powers of this country, as expressed through its courts." *Graco, Inc. v. Kremlin, Inc.,* 101 F.R.D. 503, 522 (N.D.Ill.1984). Indeed, the purpose of the Convention was to facilitate the securing of evidence among the various Nations parties to it, not to create obstacles and obstructions to this process. A foreign defendant which has had sufficient contacts with the forum jurisdiction to give it personal jurisdiction can, consistent with due process, be required, on pain of sanctions, to conform to the forum court's discovery procedures as essential incidents of the exercise of that jurisdiction. A foreign corporation, as a proper party to a case before a federal court, can be required to elect between the demands of that court and the potential reactions of the West German government, and risk the sanctions authorized by Rule 37(d) of the Federal Rules of Civil Procedure.[8]

Thus, if the scope and reach of the Hague Evidence Convention is restricted to the taking of evidence within the borders of a foreign nation, harmony can be achieved between the Hague Evidence Convention and the applicable provisions of the

---

**8.** Defendants Peter Bier, Rudolf Binsack and Bayer AG have not disputed the *in personam* jurisdiction of this court. The defendants as holders of the United States patent at issue may be subject to the jurisdiction of this court under 35 U.S.C. § 146, which expressly provides that the United States District Court for the District of Columbia shall have jurisdiction of an adverse party residing in a foreign country and which provides for the service of process on non-resident patentees.

Federal Rules of Civil Procedure where a federal court has *in personam* jurisdiction over a foreign corporation or individual. The recent decision by the United States Court of Appeals for the Fifth Circuit, issued March 7, 1985, *In re Anschuetz & Co., GmbH,* 754 F.2d 602 (5th Cir.1985), fully supports our approach and the resolution of the discovery dispute in this case.

In *Anschuetz, supra,* the German corporation, Anschuetz & Co., GmbH, a third-party defendant in the United States District Court for the Eastern District of Louisiana was ordered by a district judge to—

(i) produce 11 or more of its employees for depositions in Germany;

(ii) produce documents located in Germany in New Orleans; and

(iii) pay the attorney's travel expenses for preliminary depositions in Kiel, Germany.

The case then went to the Court of Appeals on a petition for mandamus against the district judge to require him to vacate his order as being in violation of the Hague Evidence Convention. In response the Court of Appeals, unanimously, speaking through Judge John R. Brown observed:

"After much reflection, we conclude that the Hague Convention does not supplant the application of the discovery provisions of the Federal Rules over foreign, Hague Convention state nationals, subject to *in personam* jurisdiction in a United States Court." 754 F.2d at 604.

With reference to the document production ordered, citing *Cooper Industries v. British Aerospace,* 102 F.R.D. 918 (S.D.N.Y. 1984), which held that the documents need not be in possession of a party to be discoverable, but only need to be in its custody and control, the Court of Appeals concluded that the fact that the documents were situated in a foreign country did not bar their discovery.[9] Quoting from *Cooper,* the Court of Appeals cogently observed:

"The production demanded here does not infringe on British sovereignty as it calls merely for documents, not a personal appearance. Defendant cannot be allowed to shield crucial documents from discovery by parties with whom it has dealt in the United States merely by storing them with its affiliate abroad. Nor can it shield documents by destroying its own copies and relying on customary access to copies maintained by its affiliate abroad. If one defendant could so easily evade discovery every United States company would have a foreign affiliate for storing sensitive documents." 754 F.2d at 607.

See also *Graco, Inc. v. Kremlin, Inc.,* 101 F.R.D. 503 (N.D.Ill.1984), where, in addition to taking the same approach to document production, the court stated that discovery should be considered as taking place here in the United States, not in another country, when documents located elsewhere are produced here. The *Graco* court specifically observed:

"This court believes that discovery does not 'take place within [a state's] borders' merely because documents to be produced somewhere else are located there. Similarly, discovery should be considered

---

**9.** In *Club Mediterranee, S.A. v. Dorin,* —— U.S. ——, 105 S.Ct. 286, 83 L.Ed.2d 223 (N.Y.1984), one of the questions presented was whether a state court in a private civil action violates the Supremacy Clause by ordering a party to answer interrogatories pursuant to state law, rather than utilizing the procedures authorized by the Hague Evidence Convention, where the responding party asserts that the information necessary to answer the interrogatories is available only in the territory of a foreign Nation that is a party to the Convention. In the United States' amicus brief, the Solicitor General took the position that in such a situation the Hague Evidence Convention was not exclusive and there-

fore the order of the New York trial court did not conflict with any treaty obligations of the United States under the Convention. The Solicitor General's brief expressly recognized that traditionally United States courts have held that if they have jurisdiction over a foreign party or witness, they may require that party or witness to comply with a discovery request under pain of sanctions, citing *e.g., United States v. First National City Bank,* 396 F.2d 897, 900–901 (2d Cir.1968); *In re Uranium Antitrust Litigation,* 480 F.Supp. 1138, 1144 (N.D.Ill.1979).

The Supreme Court subsequently dismissed this appeal, —— U.S. ——, 104 S.Ct. 1268, 79 L.Ed.2d 675 (1984).

as taking place here, not in another country, when interrogatories are served here, even if the necessary information is located in the other country. The court's view is the same with respect to people residing in another country. If they are subject to the court's jurisdiction, or if the court can compel a party to produce them under Fed.R.Civ.P. 37(d), then the court may order that they be produced for deposition; violation of the other country's judicial sovereignty is avoided by ordering that the deposition take place outside the country." 101 F.R.D. at 521.[10]

In referring to the order for depositions, the Court of Appeals construed the district judge's order as an order that discovery would be compelled only in the United States and thus there would be no invasion of German sovereignty. The court specifically observed:

"Depositions given voluntarily by German nationals for their convenience on German soil, when subject to a district court's *in personam* jurisdiction, do not implicate the Hague Convention." 754 F.2d at 608, n. 13.

The *Anschuetz* court referred to the transcript of the proceedings before the district judge, with approbation, in concluding that if the depositions are not given voluntarily, under Rule 30(b)(6), a German corporation could be required to designate those persons who would be its officers and agents for giving deposition testimony and be required to produce them in the United States. The court quoted the following comments by the district judge:

"I have personal jurisdiction over Anschuetz. Anschuetz is obligated to designate those persons who are its agents or officers for 30(b)(6) purposes, and to provide them for the taking of a deposition. In an effort to accommodate Anschuetz and to minimize expenses, the depositions were set in Germany. Anschuetz could just as well be required to

produce that corporate officer or other witness in the United States." Id.

Accord, *Laker Airways, Ltd. v. Pan American World Airways*, 103 F.R.D. 42 (D.D.C.1984). The *Laker Airways* court observed:

"Nowhere in these Rules is there the slightest suggestion that a party properly before the Court may not avail itself of these discovery rights [Rules 26, 33 and 34] against another party within the jurisdiction of the Court merely because the documents sought or the persons to be deposed are not located in the United States. Indeed, the Rules clearly contemplate their applicability abroad if the United States Court has jurisdiction. See, *e.g.*, Rule 28(b), Fed.R.Civ.P." 103 F.R.D. at 48.

The clear import of the quoted language is that a foreign national who is a party can be required to appear here in the United States for deposition and that a foreign corporation, subject to the *in personam* jurisdiction of this court, can be required under Rule 30(b)(6) to produce its officers, directors or managing agents in the United States to give testimony in oral deposition. *Pain v. United Technologies Corp.*, 637 F.2d 775, 788–90 (D.C.Cir.1980), *cert. denied*, 454 U.S. 1128, 102 S.Ct. 980, 71 L.Ed.2d 116 (1981), is not to the contrary. The comments in that case concerning international discovery procedures being restricted by the Hague Evidence Convention were in the context of taking evidence from a foreign non-party, over whom the court could not obtain jurisdiction.

It is significant to observe that the Senate Report quoted the following statement in support of ratification, made by Philip Amram, U.S. Representative to the Commission that drafted the Convention and Reporter of the Commission:

"[The Convention] makes no major changes in United States procedure and requires no major changes in United States legislation or rules. On the other front, it will give United States courts

---

10. Under this approach it appears that an American federal court could order a deposition of a

foreign national to take place in a nearby non-Hague Convention State or in the United States.

and litigants abroad enormous aid by providing an international agreement for the taking of testimony, the absence of which has created barriers to our courts and litigants." S.Exec.Rpt. No. 25, 92d Cong., 2d Sess. at 5.

Had the Hague Evidence Convention been intended to restrict the *in personam* jurisdiction of the American courts, there certainly would have been an outcry from the American Bar and substantial debate in the ratification process before the United States Senate. As the Court of Appeals in *Anschuetz* so cogently stated:

"It seems patently obvious that if the Convention were interpreted as pre-empting interrogatories and document requests, the Convention would really be much more than an agreement on taking evidence abroad. Instead, the Convention would amount to a major regulation of the overall conduct of litigation between nationals of different signatory states, raising a significant possibility of very serious interference with the jurisdiction of United States courts." 754 F.2d at 612.

Treating the Hague Evidence Convention procedures as exclusive and overriding the discovery provisions of the Federal Rules of Civil Procedure when an American federal district court has *in personam* jurisdiction over a foreign corporation or foreign individual party would make foreign authorities the final arbiters over what evidence may be taken from their nationals.[11] Clearly such was not intended by the Hague Evidence Convention, *Graco, Inc. v. Kremlin, Inc.*, 101 F.R.D. 503, 521–22 (N.D.Ill.1984), and a foreign court under the Letters of Request procedure of the Hague Evidence Convention should not be given the power to narrow or limit the scope of discovery otherwise proper in a federal civil case where the Federal district court has *in personam* jurisdiction. Cf. *Laker Airways Ltd. v. Pan American World Airways*, 103 F.R.D. 42 (D.D.C. 1984).[12]

Some courts have avoided determining whether the Hague Evidence Convention is preemptive and exclusive when they perceive a conflict with the discovery provisions of the Federal Rules of Civil Procedure by concluding that as a matter of

11. The Federal Republic of Germany in its amicus brief in *Anschuetz* with reference to that aspect of the district judge's order that required the German corporation to produce in the United States documents located in Germany had contended that it would be contrary to the spirit of the Hague Evidence Convention, as well as the principles of international legal cooperation, for the United States courts to circumvent the Convention by ordering German nationals or corporations, having their permanent residence or place of business in the Federal Republic of Germany, to submit in the United States to the taking of evidence which had been located abroad. The *Anschuetz* court rejected this position. The Magistrate fully concurs and construes the Hague Evidence Convention as protecting the territorial and judicial sovereignty of the State in which the evidence is taken and not as focusing on protection of the interest of the parties to a lawsuit. Thus, the Magistrate rejects the view expressed by the California court in *Pierburg GmbH, supra,* 186 Cal.Rptr. at 881, that the foundation of the Hague Evidence Convention is to honor West Germany's civil law jurisdiction that civil discovery concerning its nationals be conducted within the territory of West Germany. The Magistrate is of the view, contrary to that expressed in *Pierburg,* that officers of a German corporation responsible for

providing answers to interrogatories, could be required to leave West Germany to perform the physical act of giving the answers.

12. The Magistrate's resolution of the discovery dispute here has involved extensive research and review of the precedents and relevant authorities because of the international ramifications and the impact of a decision on civil and commercial litigation in this country involving foreign corporations and individuals. The Magistrate fully concurs with the observations of the Court of Appeals in *Anschuetz:* "The true ramifications of this discovery dispute extend far beyond the issue at stake in the case immediately before us. International commercial litigation involving nationals of signatories to the Convention is not at all infrequent. Such litigation does not generally require a court to order that foreign property be inspected, or that a deposition take place in a foreign country—but interrogatories and document requests, directed at information or evidence located in the foreign country, are a necessary and routine part of almost every case. Requiring that such discovery be processed through foreign authorities would work a drastic and very costly change in the handling of this type of litigation." 754 F.2d at 612.

international comity the procedures set forth by the Convention should be followed. For example, in *General Electric Company, Medical Systems Division v. North Star International, Inc., et al.,* No. 83 C 0838 (N.D.Ill., Feb. 21, 1985), Judge Paul E. Plunkett, in response to defendant Lufthansa German Airline's motion for a protective order "requiring that any discovery requests made by General Electric, directed to Lufthansa, be submitted in accordance with the provisions of the Convention on the Taking of Evidence Abroad in Civil or Commercial Matters", stated he did not need to decide the difficult issues of whether the Hague Evidence Convention constituted a preemptive and exclusive law of international evidence gathering and whether it might be found to supersede the discovery provisions of the Federal Rules in cases involving international discovery, observing:

"Every court of which we are aware which has considered the question has concluded that, regardless of whether the Hague Convention establishes preemptive and exclusive rules of discovery, the principles of international comity strongly counsel that, as a matter of judicial self-restraint, a party should be required to abide by its provisions. *See Philadelphia Gear Corporation v. American Pfauter Corporation, [100]* F.R.D. *[58],* (Civ. A. No. 82–5500 (E.D.Pa. Nov. 16, 1983); *Schroeder v. Lufthansa German Airlines,* slip op. at 3–4; *Lasky v. Continental Products Corporation,* 569 F.Supp. 1227, 1228–29 (E.D.Pa.1983); *Pierburg GmbH & Co. KG v. Superior Court,* 137 Cal.App.3d 238, 186 Cal.Rptr. 876, 878–79, 880–81 (2d Dist.1982); *Volkswagenwerk Aktiengesellschaft v. Superior Court,* [123 Cal.App.3d 840], 176 Cal.Rptr. [874] at 885–86 [(1981)]."

But in this Magistrate's view this is not a case for the exercise of such judicial restraint and reliance on international comity. First, based on this Magistrate's experience, litigation of patent cases is predicated heavily on documentary and record evidence concerning an invention—its conception, its developmental research and its reduction to practice. Thus, pretrial discovery in patent cases frequently require substantial document production. Under West Germany's reservation to the Hague Evidence Convention, it will not execute Letters of Requests issued for the purpose of obtaining discovery of documents as known at common law. In its amicus brief filed in *In re Anschuetz & Co., GmbH* in the Fifth Circuit, dated September 25, 1984, the Federal Republic of Germany, through its counsel, stated

"The Federal Republic of Germany declared in pursuance of Article 23 of the Convention that it will not, in its territory, execute Letters of Request issued for the purpose of obtaining pre-trial discovery of documents as known in common law countries.

"The O.L.G. Munich in the above referred to judgment of November 27, 1980 [Court of Appeals Munich ruling in *Corning Glassworks v. International Telephone & Telegraph Corp.* ITT, No. 76–0144 (W.D.Va.1976)] permitted the examination of witnesses concerning the origin, content, business purpose and economic impact of documents; it upheld the Central Authority's denial of the Request for the production of documents."

See also Platto, *Taking of Evidence Abroad for Use in Civil Cases in the United States,* 16 Int'l.Law 575, 584 (1982).[13] However, oral deposition of testimony of contents of documents and records relevant to patent issues would be highly unsatisfactory. The actual documents and records may be just as critical in a patent priority

---

**13.** Another leading commentator in this area of the law has observed that the German declaration concerning document production presents considerable problems to American litigators, in that it eliminates the availability of judicial assistance with respect to a very important area of our legal system. Shemanski, *Obtaining Evidence in the Federal Republic of Germany: The Impact of the Hague Evidence Convention on German—American Judicial Cooperation,* 17 Int'l. Lawyer 465 (1983).

case as in an antitrust case. *Cf. In re Uranium Antitrust Litigation,* 480 F.Supp. 1138 (N.D.Ill.1979). Furthermore, the requestor could be met by the obstacle of the German business secrets privilege, see discussion in Platto, *supra,* 16 Int'l.Law at 584 (1982), and a more expansive interpretation of attorney-client privilege under the German law than under the American law, see Shemanski, *Obtaining Evidence in the Federal Republic of Germany: The Impact of the Hague Evidence Convention on German—American Judicial Cooperation,* 17 Int'l. Lawyer 465, 486 (1983). Further, in Germany, a civil law country, the searching out of evidence for use at trial is a public, not a private, function, and the judge, not the parties, has the initial authority to determine which witnesses to question, what questions to ask, and which documents, if any, should be produced, and also frequently witnesses do not testify under oath. And indeed, judicial summaries of the witness' testimony, rather than a verbatim transcript, appear to be the rule. Shemanski, *supra,* 17 Int'l.Law at 466–69 (1983). See also Platto, *supra,* 16 Int'l.Law at 576, 584–85 (1982), in which the author describes his personal experience in the first major application of the Hague Evidence Convention to a complex antitrust case in the taking of pretrial discovery in the Federal Republic of Germany and noted that the taking of evidence abroad in the face of determined opposition can be a long, expensive and difficult process. It is obvious that such a procedure for the gathering of evidence pretrial for a complex patent priority case, such as this case is, will be highly ineffectual in obtaining the evidence essential to a fair adjudication of the issues. Further, a German judge has the absolute discretion to control the scope of oral examination and the extent of discovery, and as the court observed in *Laker Airways Ltd. v. Pan*

*American World Airways,* 103 F.R.D. 42, 48 (D.D.C.1984), may even refuse a judicial Letter of Request if, in his sole discretion, a response would be contrary to the sovereignty or security interests of the Federal Republic of Germany. We cannot now say whether a protectionist attitude would be taken with respect to Bayer AG and its German and United States patent rights, but it is not implausible to conclude that limits may well be imposed on discovery concerning the application and perfecting of the German patent rights through which Bayer has established its priority rights to the United States patent in issue in this case.[14] The added delay, incurred in the translation of the request materials from English to German, the procedural steps involved, the additional expenses, the taking of the depositions in German and then translation into English and filing thereafter with the federal district court are also factors to be considered. From this Magistrate's study of the relevant legal commentary and judicial precedent, it is concluded that discovery through the Hague Evidence Convention procedures could well require an additional six (6) months to a year, if not longer. Another factor to be considered, notwithstanding the defendants' claim that this is merely a private suit affecting private interests, a characterization with which this Magistrate disagrees, is that the litigation here implicates United States interests of a constitutional magnitude in connection with its administration of its patent laws under U.S. Const. Art. 1, § 8, cl. 8. This interest is just as important as the public interest in the administration of our antitrust laws involved in *Laker Airways Ltd. v. Pan American World Airways,* 103 F.R.D. 42 (D.D.C.1984).

▆▆▆ Thus, where the American federal district court has *in personam* jurisdiction over a foreign national, corporate entity or an individual, it is not required to mandate that the parties follow the Hague Evidence

**14.** As the court in *Anschuetz* observed, "judicial cooperation may be withheld altogether if the discovery assistance requested is deemed prejudicial to state sovereignty." The court further cogently commented, "even when discovery abroad is available, the breadth of evidence ordinarily expected from a full fledged Ameri-

can deposition might be restricted for any number of reasons: the foreign state's own procedures might limit or foreclose cross-examination, full participation of counsel might not be allowed, or a verbatim record might not result, thus limiting admissibility of testimony in an American court." 754 F.2d at 610.

Convention procedures for pretrial discovery, nor is it required to exercise judicial restraint and to defer to international comity where the utilization of the Hague Evidence Convention procedures would lead to inordinate delay,[15] even to the extent that any pretrial discovery were accomplished, or would be totally ineffectual. In such a situation, the court can, and should, mandate compliance by a foreign party with Rules 26, 33, 34 and 36 of the Federal Rules of Civil Procedure for the giving of oral depositions, answering of interrogatories, the producing of documents and records, and responding to requests for admissions. When a foreign corporation is subject to the *in personam* jurisdiction of the federal district court because it has done sufficient business in the United States, has property here, or, as in the present case, has requested and received a benefit, such as letters patent, from the United States Government, that party can be subjected to the full range of sanctions, within the discretion of the court, as may be warranted by the factual circumstances surrounding the non-compliance. *In re Anschuetz & Co., GmbH*, 754 F.2d 602, 615 (5th Cir.1985). Plaintiffs have repeatedly argued in this case that

the defendants must either bring their witnesses and their documents to the United States or concede this lawsuit, which would result in plaintiffs being declared the legal first inventor of the contested invention and entitled to the United States patent. Thus, they have suggested that if the defendants do not cooperate in pretrial discovery, the court has the power to impose sanctions, including the sanction of judgment by default, pursuant to Rule 37(d), Federal Rules of Civil Procedure. It would be premature at this juncture to determine whether non-compliance should result in that or some lesser sanction. Cf. *Societe Internationale v. Rogers*, 357 U.S. 197, 78 S.Ct. 1087, 2 L.Ed.2d 1255 (1958).

Based on the foregoing analysis of the Hague Evidence Convention provisions, the judicial precedents, and the legal commentary thereon, the defendants Peter Bier, Rudolf Binsack and Bayer AG will be required to submit to pretrial discovery in the United States, including appearing for oral depositions, pursuant to the terms and conditions set forth in a separate Order which accompanies this Memorandum.[16] If the defendants wish to do so, under conditions which would not implicate German sovereignty, they may voluntarily agree to oral

**15.** The Magistrate has considered the option of whether the plaintiffs should be required to comply with the Letters of Request procedure first, and if the evidence is not then forthcoming, then to require compliance with the Federal Rules of Civil Procedure, under pain of sanctions, to produce evidence in the United States, including appearing for depositions here. First, this could result in an even greater affront to the sovereignty of West Germany because it could result in the American federal judge overruling the German judge to the extent the German judge has denied the requested discovery or limited the scope thereof and the American judge thereafter permits or requires the discovery denied by the German judge. As the court stated in *Graco, Inc., supra,* the greatest insult to the civil law countries' sovereignty would be for American courts to invoke their judicial aid merely as a first resort, subject to the eventual override of their rulings under the Federal Rules of Civil Procedure. 101 F.R.D. at 523. Second, such an approach could result in going through the discovery procedures two (2) separate times with resulting extensive delay and substantially increased expenses before the case can be brought to trial.

**16.** The defendants have taken the position that any depositions of the defendants should be conducted in the German language. They have stated that the two individual inventors, Peter Bier and Rudolf Binsack, are native German speakers, and that undoubtedly any other Bayer AG witnesses would also be native German speakers. They assert that in this highly complicated field of technology, such witnesses are entitled to be interrogated and to answer in their native tongue, German, in which they normally think, so as to be able to understand the subtleties of all questions about the invention and to answer accordingly. The Magistrate fully agrees, but will require that the defendants have the German language transcripts of the depositions translated to verbatim English, and that both German and English versions of the depositions be filed with the court. The expense of this process and the preparation and filing of both German and English transcripts of depositions shall be fully borne by the defendants.

A related foreign language problem has been raised in connection with the production of documents by Bayer AG, most of which will probably be in German. Since there appears to

depositions before an American consular official in the Embassy at Bonn, Germany, provided such oral depositions are truly voluntary, are of the same scope as if they were occurring here in the United States, and are done only after notice to the government of the Federal Republic of Germany. If the German Government objects, the party defendants must appear in the United States for the depositions.[17] This includes Rules 30(b)(6) depositions of the corporate defendant Bayer AG. The discovery allowed by this ruling shall commence promptly so as to be completed within such additional reasonable period of time for discovery as the court may set at the status hearing of May 3, 1985.

See also, D.C., 536 F.Supp. 627.

be no problem concerning the adequacy of financial resources of Rohm and Haas Company, it should bear the expense of translation of documents its counsel receives. With reference to any documents to be filed with the court for any purpose, the party filing the document shall also file an English translation thereof and will be required to bear the expense thereof.

17. It is noted that the defendants in their motion to quash plaintiffs' notice to take the depositions of Bier, Binsack and Bayer AG, scheduled for April 8, 1985, in Washington, D.C., asserted that Rudolf Binsack was too ill to come to the United States for his deposition. If he is still too ill, perhaps he can truly volunteer to have his deposition taken in West Germany for his convenience. The Magistrate does not construe a foreign party's exercise of his option to have a deposition taken in his home State as opposed to coming to the United States to be "compulsion" within the meaning of the treaty arrangements between the United States and West Germany.